### ELLEN B. DUNLOP *v.* ROBERT DUNLOP.

[Abstract Kentucky Law Reporter, Vol. 3—20.]

**Residence of Wife in Divorce Suit.**

 A suit for divorce by the wife must be brought in the county where she resides, but where the husband resides in this state, his domicile is in law the fixed residence of the wife, even though actually living elsewhere; and the courts of this state have jurisdiction to hear and determine her cause, and such jurisdiction is in the court of the county where her husband resides.

APPEAL FROM LOUISVILLE CHANCERY COURT.

June 2, 1881.

OPINION BY JUDGE PRYOR:

The parties to this action were married in the state of Virginia on the 6th of February in the year 1878, and in a few days removed to the home of the husband at or near Louisville, Kentucky. The wife returned to the home of her parents in about five or six months after the marriage, where she has since remained.

The husband has continued to reside in Kentucky, and on the 19th of February, 1879, the wife instituted this action against him, in the Louisville Chancery Court, for a divorce and alimony on the grounds of the existence of an alleged loathsome disease upon him at the time of the marriage, and his concealment of that fact from her.

The chancellor dismissed her petition and she has appealed. It is maintained by counsel for the appellee, the husband, that the wife, being an actual resident of the state of Virginia at the institution of the action, the courts of that state alone had the jurisdiction to hear and determine her complaint. In that position we can not concur. The domicile and residence of the husband was in Kentucky when the action was brought, and he had been living within the state for more than one year, and his counsel must give to the chancellor the jurisdiction. The statute of this state, with reference to this character of action, required the suit to be brought in the county where the wife actually resides, and, being local in its application, can not be construed to mean that, if actually living out of the state, the action must be brought where she resides, thereby divesting the courts of this state of jurisdiction.

It is true the statute provides that the action shall not be brought by one who has not been a continuous resident of the state for a year next before its institution, but this provision can not be made to apply to the wife, because she is living in another state apart from her husband, when his domicile or residence is within the state. The domicile of the husband is, in law, the fixed residence of the wife; she may live elsewhere, but her legal residence is with the husband, and the words continuous resident for more than one year in this state, when affecting the rights of the wife, must be so construed; otherwise she is deprived of any remedy unless she returns and lives

within the state for the mere purpose of enabling her to sue her husband.   Gen. Stat. (1879), Ch. 52, Art. III, § 4.

It is certain that the courts of this state would not recognize as binding upon them the judgment of a sister state divorcing the wife from the husband in a case like this, where the husband was an actual and bona fide resident of this state, the separation taking place here, and the wife seeking another jurisdiction for the purpose of dissolving the marriage relation.  The chancellor would determine in such a case that her residence was in Kentucky, and that she could not abandon her husband and his home to make such complaint in another judisdiction.   This present question was decided in the case of *Maguire v. Maguire,* 7 Dana (Ky.) 181, when this court said that no such divorce would be recognized or held as valid.

The husband and wife living in Kentucky when the separation took place, and the cause of the divorce accruing here, the fact of the wife being out of the state when she instituted the action will not be adjudged by the chancellor as depriving him of the jurisdiction; and although she may be living out of the state, that fact will not be regarded as a change of residence or domicile so as to give the foreign state or territory jurisdiction to annul the marriage contract.

It is conceded that the actual residence of the appellee is now, and was at the time of the separation, within this state, and that he has at all times been within the jurisdiction of its courts.   If the wife contracted the disease at or after the marriage, the chancellor will not stop to inquire whether it was communicated to her during the first or second week of their married life.   If she had this disease, and it was caused by reason of the marital relation, she was as liable to have been impregnated with the poison in this state as in Virginia.   See Buckner & Bullitt's Civ. Code (1876), § 76, as to the jurisdiction of the chancellor.

If the wife is not in the state the suit must be brought in the county of the husband's residence.   It is alleged in the amended petition that the disease existed and was upon him in this state at the time of their marriage, and that the concealment occurred in this state, and it would certainly be technical to hold under the original pleadings that the appellant must have contracted the disease in Virginia, and that the cause of divorce originated in that state, because it is alleged that the appellee had the disease

at and before the marriage. The sole question presented by this record is, Did the appellee have syphilis, and was that disease communicated by him to his wife, and, further, did he conceal the fact of his having this disease from her?

The testimony found in the record presents a singular state of case, and but for the peculiar condition of appellee's genital organs shortly before his marriage, a doubt might possibly arise as to the manner in which this unfortunate plaintiff contracted the disease. That her whole system was inoculated with syphilitic poison, and she made a wreck by reason of its ravages upon her, is clearly established if the opinion of men skilled in medical science, who actually saw and administered to the patient in her sufferings, are to be considered by the chancellor. These medical men not only testify as experts, but actually examined and treated the unfortunate wife for the disease; and it is impossible, or at least improbable, that men of such standing in their profession could be mistaken, or that they would not only stultify themselves, but blight forever the future of the young wife by even mentioning her in connection with the horrid disease, merely for the purpose of gratifying her parents in their desire to have the marriage dissolved. Nor is it to be presumed that her father and mother, or either, are so destitute of parental feeling as to ruin forever a daughter they have raised so tenderly and loved so well, for no other purpose than to obtain this divorce. Their love and affection for the daughter, evidenced upon almost every page of this record, repels any such conclusion, and there can be no doubt but the appellant contracted the disease shortly after the marriage, and that it was communicated to her by the appellee. That she might have contracted the disease by accident is unquestioned, and such a conclusion might be reached if there were no other facts in this case than the statements of learned physicians, who examined the appellee after this suit was instituted, and even the statements of medical gentlemen, who treated the appellee for the sore on his male organ shortly before his marriage.

The entire proof shows that, up to the time of the marriage, the wife was a robust, healthy and beautiful girl, and every effort to show that the disease was hereditary, or not the disease alleged to have existed, has been successfully refuted. It is shown that shortly after the marriage the syphilitic symptoms

manifested themselves, and in a little while her entire system was infected with it. That the appellee was diseased is evident, and also that shortly before his marriage he became restless and uneasy in regard to his condition, and consulted physicians in Baltimore and Louisville to know the nature of the disease. It is true some scientific men were of the opinion that it was herpes and not syphilis, and if they are not mistaken, the appellant, by some of her associations, became infected with the poison, still this view of the question can not be maintained.

Her social relations were of as high an order as that of any young lady in Virginia. Neither her family nor neighborhood associations would authorize any such a conclusion; nor will the chancellor close his eyes to the fact that no appearance of any such disease ever manifested itself upon the young woman until after the marriage was consummated, and then, within the prescribed time, as ascertained by medical science and stated by learned physicians in this case, the disease and its effects began to develop. Dr. Yandell gives the appearance of the diseased organ with a sore as large or larger than his thumb nail, disfigured by a chancroid, and by a discharge from the urethra, and although he had in a former deposition concluded the young man was free from the disease, when, as an expert, he learns the history of the appellant, he seems to have no doubt but that he was diseased at the time of his marriage. The statements of Drs. Chisolm, McSherry, Johnson, Taylor, etc., who are distinguished in their profession, stand uncontradicted on the record as to the disease with which the appellant was afflicted and the diseased condition of the appellee, followed by the condition of the wife shortly after the marriage, and his letters to her suggesting, "I deserve nothing but hatred, but detestation," "I have wrecked your life—mine is miserable," are facts removing all trouble in arriving at a proper solution of this unfortunate controversy.

The appellee knew the opportunities he had for contracting this disease, and although the advice given him by medical men may, to some extent, palliate the wrong, he concealed from the wife that which she ought to have known, and the chancellor ought not, under the circumstances of this case, to add to her misfortune by denying the relief sought.

The plea of condonation, if properly made, but aggravates the

wrong. No such plea can be maintained where the husband, protesting his innocence to a faithful and confiding wife, invites her to his bed that he may renew the evidence of his affection for her.

The judgment of the court below is therefore *reversed,* and the cause remanded with directions to grant the relief asked, and for further proceedings consistent with this opinion.

*R. W. Woolley, for appellant.*

*Muir, Bijur & Davie, for appellee.*

[Cited, *Cummings v. Cummings,* 133 Ky. 1, 117 S. W. 289; *Muir v. Muir,* 133 Ky. 125, 28 Ky. L. 1355, 92 S. W. 314, 4 L. R. A. (N. S.) 909; *Miller v. Miller,* 141 Ky. 681, 133 S. W. 588.]