CASE 15.—ACTION BY JOSEPH MUIR AGAINST MARY E. MUIR FOR DIVORCE IN WHICH DEFENDANT FILED A CROSS BILL FOR DIVORCE AND ALIMONY. March 22, 1906.

## Muir v. Muir

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From the decree granting a divorce to defendant both parties appeal—Affirmed on plaintiff's appeal and reversed on defendant's appeal.

1. Divorce—Appeal.—So much of a decree for divorce and alimony as grants a divorce is unappealable.

2. Same—Alimony—Statutes—Construction.—Ky. St. 1903, Sec. 2122, providing that, if a wife have not sufficient estate of her own, she may, on divorce obtained by her, have such allowance of that of her husband as shall be deemed equitable, does not preclude her from alimony in case the husband have no present fee-simple estate in his property.

3. Same—Probable Earnings—Expectancy.—A husband's contemplated probable earnings and accretions of wealth from any other source may be considered in determining the amount of alimony to be awarded to his wife on the rendition of a divorce.

4. Same—Estate in Possession.—That a husband held only an estate in possession of certain land owned by his father, and not a fee, did not preclude the wife from being allowed alimony therefrom.

5. Same—Definition.—Alimony is that provision which the law makes for the support of the wife, on the dissolution of the marriage, out of the estate of the husband, after separation, in lieu of his common-law obligation to support her as wife, if they should have continued living together.

6. Same—Amount—Alimony in Lieu of Dower.—As alimony given to a wife on a decree of divorce becomes her portion in lieu of dower, she is entitled in any event to such a sum as her dower interest in her husband's estate would have amounted to.

7. Same.—A husband's estate at the time of the entry of a divorce decree amounted to at least $15,000. Both parties were 28 years of age, and he, apart from his dissolute habits and a chronic disease, was in good health and had ability to labor and earn money, while the wife was without means or other prospects to support herself and two children awarded to her custody. The wife and one of the children were also in ill health as the result of syphilis, communicated to them by the husband. Held, that a decree awarding her $1,000 alimony

and $10 a month toward the support of the children was inadequate, and should be increased to $5,000.

8. Same—Conveyances in Fraud of Wife—Effect.—Ky. St. 1903, Sec. 2126, provides that sales and conveyances made to a purchaser with notice in fraud or hindrance of the right of a wife or children to maintenance shall be void as against them. Held, that mortgages executed by a husband pending suit for divorce to his father and brother, to a bank in which they were officers and large stockholders, and to other creditors generally, with notice, should not be considered in determining the amount of alimony to be awarded to the wife.

9. Same—Lewdness—Adultery — Condonation. — Lewdness and adultery of a husband was not condoned by subsequent cohabitation, as provided by Ky. St. 1903, Sec. 2120, where the offense was aggravated by syphilis communicated by the husband to her and one of the children.

JOHN D. WICKLIFFE, for appellant.

JOHN S. KELLY, for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Appellant, a member of a rich and distinguished family, was married at the age of 20 to appellee, who was about the same age. She was of honorable parentage, who were in modest circumstances. The parties are now about 28 years old. Within a year after their marriage appellant developed the disease of syphilis. Whether contracted before or after his marriage is not shown. He continued to live with his wife, by whom there were born to him two children, there being less than two year's difference in their ages. Appellee claims that she contracted the disease from her husband before she knew he had it, and that one of the children, the elder, has also shown symptoms of the taint in his blood of this dread malady. Appellee did not then leave her husband. She says that she was humiliated by the knowledge of their affliction, but was willing to bear it in silence rather than make it public by an abandonment on that account. In the meantime appellant's conduct toward her became such as to indicate a settled aversion to her, and was so habitually cruel as to put her in fear of life or great bodily harm. She

sued him for divorce on this last-named ground; but the action was dismissed on her motion before trial for reasons not affecting this case.   Thereafter appellant sued her for a divorce upon the ground of abandonment.   She defended, justifying her abandonment under the reasons first stated, and made them, furthermore, a ground for her claim for divorce, which she prayed for in her answer. She also prayed for support and alimony.   The chancellor dismissed appellant's petition, granted appellee's prayer for divorce, and adjudged her $1,000 as alimony, and $10 per month toward the support of her children.   The custody of the children was awarded the mother, and no provision made, though requested by appellant, for him to see them, or have them visit him.   He has appealed from the decree, except that part adjudging the divorce, from which no appeal lies.

He contends that his wife was in fault, wherefore it was erroneous to allow her alimony at all.   The proof in our opinion sustains the conclusion of the chancellor.   It tended to show that appellant had, for some years before his wife quit him, spent most of his nights, or rather a great part of most of his nights, in the town of Bardstown, leaving her and her child, or children, at their home in the country, unattended frequently, and occasionally by a negress servant only.   He had no business away from home on many of these occasions, but spent his time loafing about barrooms, and in company sometimes. it was shown, of dissolute women of notorious character. His treatment of his wife was unfeeling and harsh. Witnesses said he assaulted her, struck her, cursed her, abused her, and threatened her.   The record leaves no doubt that he had such a settled aversion for her as to indicate a complete alienation of affection.   On all the grounds charged by her, including infidelity, the proof amply sustains the chancellor's finding in behalf of appellee.

Appellant's father is a rich man. As his sons reached manhood, and were married, he advanced them each about $10,000, or settled them in substantial business. After appellant's marriage, his father bought a farm of about 200 acres, known as the "Holtshouser Farm," paying $10,000 for it. He took the title to himself, but put appellant in possession of it. Appellant bought another place near by, known as the "Johnson Farm," for which his father paid. It is worth about $4,000. The title to it was taken to appellant. His father gave him live stock, such as horses, cows, and stock cattle, and farming implements. There was evidence that appellant's father has said that he gave all this property, except the stock cattle, to his son as an advancement, and had so charged it to him on his book of advancements. The witness further testified that appellant's father showed him the book and entries to that effect. Appellant at the time of the separation was in possession of all his property; but has since sold some of it. The lands he is yet in possession of, and has rented the farms from year to year, collecting and using the rents. He claims, though, that he is insolvent; that the Holtshouser farm does not belong to him, but belongs to his father; that the Johnson farm he has not paid for, but yet owes his father the purchase money advanced by him to buy it; that he yet owes for the personal property. His father, after the separation and after this suit was brought, was partially paralyzed, so that he ceased to attend to his business affairs, and it was also said he was unable to give his deposition in this case. During this condition, appellant, at the instance of his brother and some other relatives, executed a mortgage to his father and brother, to the bank of which his father and brother were officers and large stockholders, and to his other creditors generally, upon all his property, to secure an alleged indebtedness of about $10,000. The elder Muir did not know of this arrangement, did not authorize it, and so far as this

Muir v. Muir.

record shows did not approve it.    Other creditors
named in the mortgage are shown to have been
equally ignorant of its execution.   Appellant is a man
not lacking in understanding or education.   Barring
the ailment referred to, he is in good health, and is
able to work, but, it seems, is not, or has not been, a
successful business man.   This, however, is probably
due more to his habits than lack of ability.   Appellee
has no property, no means of support.   Her father
is a poor man.   Her mother has no property.   With
this situation, what relief should the chancellor have
decreed?   Appellant contends, nothing.   Appellee,
dissatisfied with the decree fixing her alimony, has
prayed a cross-appeal to have it increased.

The statute is (Section 2122, Ky. St. 1903):   "If
the wife have not sufficient estate of her own she
may, on a divorce obtained by her, have such allow-
ance out of that of her husband as shall be deemed
equitable."   But this does not mean that, if the hus-
band have no present estate, his wife shall not be
entitled to alimony.   His contemplated probable
earnings may be the basis for such allowance.   Canine
v. Canine, 16 S. W. 367, 13 Ky. Law Rep. 124.   Nor
do we perceive why, if probable earnings, as a rea-
sonable expectation, may properly be considered,
probable accretions of wealth from any other source
may not also be considered.   But, before discussing
that feature to a conclusion, we will take up what
appellant did own, or was possessed of, at the time
of the separation and of the decree.   He certainly
owned the Johnson farm, worth about $4,000.   He
owned a half dozen or more horses, a number of
cows and hogs, a quantity of corn, a lot of farming
implements, buggies, etc., about 15 head of stock cat-
tle, and some household furniture.   The value of all
this property is not satisfactorily shown, but it is no
stretch to assume from the evidence that the per-
sonal property alone was worth $1,500 or more.   It
was probably worth more.   The Holtshouser place,
worth $10,000, he had in possession. It was not rented

to him. The use of it, at least, had been given to him by his father. It is not essential that the husband should own the fee-simple title to the land in order to have the value of his interest considered in fixing alimony. Alimony is not necessarily carved out of the same estate as dower. If he owned it, or was in possession of it under even an invalid gift, so long as that possession was undisturbed, his wife's right to have the use of a part of it set apart to her as alimony is not less than if he owned it in fee simple. She would simply get less in the former than in the latter event, because her possession would in that case be as unstable as his title, but no less so. If she ought to have had the use of say one-third or one-half his land as part of her alimony, if he had owned it in fee simple, no less than an equal quantity of the same land should be set apart to her, if he owned a less etsate in it than a fee simple. Suppose his was a life estate, or any freehold estate, she would nevertheless be as much entitled to support from it as if it were a greater.

Alimony is that provision which the law makes for the support of the wife, or of her who was the wife, out of the estate of the husband after separation, in lieu of his common-law obligation to support her as wife if they should have continued living together. She was entitled to and had his support out of all he possessed, including earnings. When he has broken up that relation, so that she can no longer partake jointly with him of such support, the law sets apart to her enough of his estate, including earnings, to make an equivalent of what she is denied by his fault. Less than that would be to put a pecuniary premium upon the husband's abandonment of his wife (which would be the highest impolicy in society), as where he saw that he was about to come into the possession of an inheritance as heir apparent, if he could get the matter of divorce over with before the inheritance was cast upon him he would have succeeded in defeating his wife of the

enjoyment of her anticipated interest in the property, which he had in prospect. Marriage, as it affects property rights, rightfully affects in some degree all that the husband then has and all that he has in prospect. For, as by experience, their mutual economy and helpfulness, the foundation of a future competency may be laid, many of the early privations undertaken and endured by young married people are in the not unreasonable expectation of future benefits, measurably certain of attainment. Many of these are admittedly too intangible to lay hold on in estimating a precipitated adjustment between the parties. But where they are reasonably certain, and particularly where they have been in a manner realized, though but tentatively, they can be and should be carried into consideration, and such a decree entered as will protect the wife, who is then cut off from the future participation, by a present allowance as nearly the equivalent of what she has been deprived, and which she rightfully would have come into the enjoyment of, as the circumstances of the case will admit. Alimony given upon a decree of divorce becomes the wife's portion in lieu of dower. McKean v. Brown, 83 Ky. 208, 7 R. 183; Hawkins v. Ragsdale, 80 Ky. 353, 4 R. 184; 44 Am. Rep. 483. Where she is entitled to alimony, it would seem to be improper to give her less, in any event, than what her dower interest in her husband's estate would have been. It would not be too much to say, in this case, that appellant's estate, out of which the alimony should be set apart to appellee, should be reckoned at at least $15,000. It may shrink upon realization, it is true. In that event, appellee would probably be unable to collect what may be finally set apart to her. The size of the allowance is not so material as what part of it is realized.

In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial discretion of the chancellor. It will be regulated

by a number of circumstances that properly enter into the consideration. Among them is the size of the estate of the husband, and its productiveness; his income and earning capacity; his age, health and ability to labor; the age, health, and station of the wife; and, it may be added, that the particular cause of the divorce, may properly enter into the consideration, as will be illustrated further along. We have already discussed the estate of the husband and something of his ability to earn money and to labor to make a support for a family. It has been seen, too, that the wife is without means or other prospects. She has been subjected to a contamination by the fault of appellant that will forever be to her a burning shame, and will doubtless be a perpetual menace to her health and future usefulness. Her children, whose charge and care she has, likewise are the victims of a cause that may, and it seems in one instance now does, threaten their health. This dire calamity, an irremediable tragedy in the life of this young wife, is one, as it was caused by the fault of appellant, he should help her to bear. His share of the burden, in so far as it can be measured in money, should reasonably extend beyond the bare necessities of existence. It should go to maintain the wife and children in as good station, and with equal comforts, as they would have probably enjoyed but for this enforced separation. Her alimony should be fixed at not less than $5,000. As part of it, she should be given the use of at least one-half of the real estate of appellant, and more if necessary.

The mortgage to Muir and Wilson and others should be set aside or ignored. Section 2126, Ky. St. 1903, pertaining to divorce and alimony, reads: "Sales and conveyances made to a purchaser, with notice, or for the benefit of any religious society, in fraud or hindrance of the wife or child to maintenance, shall be void as against them." This suit was pending when this mortgage was executed. The mort-

gagees had notice of appellee's claim, and the pending of the action to enforce it.

As to the custody of the children, and the right of appellant to have them visit him, for the present that order will not be disturbed; but the court may reserve control of that feature of the case, so as to regulate it in the future should it be deemed advisable and proper.

Appellant contends that the offense of his disease was condoned by appellee's voluntary cohabiting with him after she had knowledge of his condition. The statute allows cohabitation to operate as a condonement of lewdness or adultery. Section 2120. But the offense is aggravated, it seems to us, for a diseased spouse to inoculate the other with a dreadful venereal ailment, possibly curable, possibly not, and then claim a condonement because further cohabitation was indulged after that fact. Dunlop v. Dunlop, 3 Ky. Law Rep. 20. A condonement is not shown here. This case is hard. The erring young man undoubtedly suffers, and will suffer, greatly. Nothing is set down here in harshness against him. This result is the law's retribution from him to her whom he has most grievously wronged.

The judgment on the original appeal is affirmed, on the cross-appeal the judgment is reversed, and the case is remanded for judgment in conformity herewith.

Hobson, C. J., not sitting.