ESTATE OF SILAS B. MASON, DECEASED, BY SAM A. MASON, HORATIO P. MASON, AND SUSANNE B. MASON, CO-ADMINISTRATORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100944.   Promulgated February 28, 1941.

*John F. Greaney, Esq.*, and *H. M. Collins, Esq.*, for the petitioners.
*Thomas F. Callahan, Esq.*, for the respondent.

814

**OPINION.**

HARRON: The first question is whether the proceeds of the policies of insurance which were taken out by decedent upon his own life and

which were pledged by him with his former wife to secure the payment of the amount allowed her as alimony by the Fayette Circuit Court should be included in the decedent's gross estate, under section 302 (g) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin.[1]

On their estate tax return petitioners did not include the proceeds of the policies in the gross estate. In the statement attached to the deficiency notice respondent included the proceeds of the policies in the gross estate on the ground that "the record discloses that decedent, at the time of his death, was vested with such incidents of ownership of the life insurance policies involved as to bring them within and to make them a part of his taxable estate."

In their brief petitioners assume that the proceeds of the policies were receivable by a beneficiary other than decedent's "executor" within the meaning of subsection (g) and argue that the proceeds of the policies may not be included in the gross estate because at the time of his death decedent retained no incidents of ownership in the policies. Petitioners rely on *Anna Rosenstock*, 41 B. T. A. 635; *D. W. Blacksher et al., Executors*, 38 B. T. A. 998; *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970. Respondent also assumes in his brief that the proceeds of the policies were receivable by a beneficiary other than decedent's "executor" within the meaning of subsection (g) and argues that the proceeds of the policies may be included in the gross estate because at the time of his death decedent retained incidents of ownership in the policies. Respondent relies on *Old Point National Bank, Executor*, 39 B. T. A. 343.

In our opinion the proceeds of the policies should be included in the gross estate. The proceeds of policies of insurance taken out by a decedent upon his own life which in terms are payable to a beneficiary other than the decedent's "executor", but which are required to be used, and are in fact used, to satisfy debts of decedent or his estate, should be treated as being receivable by the decedent's "executor" within the meaning of subsection (g) and should be included in the decedent's gross estate. *Mathilde B. Hooper, Administratrix*, 41 B. T. A. 114; and see *Marmaduke B. Morton, Administrator*, 23 B. T. A. 236; *Pacific National Bank of Seattle, Executor*, 40 B. T. A. 128; *Estate of Waldo Rohnert*, 40 B. T. A. 1319; Regulations 80,

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

art. 26;[2] Paul, "Life Insurance and the Federal Estate Tax", 52 Harvard Law Review 1037, 1059; even though decedent irrevocably assigned the policies to the beneficiary, and did not reserve to himself the power to borrow on the policies or to receive the cash surrender value thereof or "to exercise any of the incidents of ownership therein." *Mathilde B. Hooper, Administratrix, supra.* At the time of decedent's death, with the exception of policy No. 292183 issued by the Phoenix Mutual Life Insurance Co., which was payable to decedent's executor, administrator, or assignee, all the policies here were in terms payable to Rosa Tucker Mason. However, by the provisions of the judgment of the Fayette Circuit Court and of the several agreements executed by decedent the proceeds of all the policies were required to be used to satisfy decedent's obligation to pay the amount fixed in the judgment of the Fayette Circuit Court as the alimony of Rosa Tucker Mason, and, in fact, were so used. Therefore, under the principles set forth above, the proceeds were receivable by the decedent's executor within the meaning of subsection (g) and should be included in the gross estate.

Even if the proceeds were regarded as receivable by a beneficiary other than the decedent's executor within the meaning of subsection (g), the proceeds should be included in the gross estate because at the time of his death decedent retained certain incidents of ownership in the policies. See *Chase National Bank* v. *United States*, 278 U. S. 327. The policies were merely pledged by decedent with Rosa Tucker Mason as collateral security, cf. *Nelson* v. *Commissioner*, 101 Fed. (2d) 568; *Estate of Harriet Blair Borland*, 38 B. T. A. 598; and the several assignments executed by decedent to Rosa Tucker Mason were conditional and not absolute. Vance, Handbook of the Law of Insurance, secs. 143–145. Cf. *Anna Rosenstock*, 41 B. T. A. 635. Petitioner had the power to obtain redelivery of the policies at any time by paying Rosa Tucker Mason the amount fixed as alimony in the judgment of the Fayette Circuit Court. Rosa Tucker Mason's

---

[2] Article 26 of Regulations 80 has been amended recently by T. D. 5032, promulgated January 10, 1941, to provide as follows:

"ART. 26. *Insurance in favor of the estate.*—The statute requires the inclusion in the gross estate of all insurance receivable by the executor or administrator or payable to the decedent's estate, and all insurance which is in fact receivable by, or for the benefit of, the estate. It includes insurance effected to provide funds to meet the estate tax, and any other taxes, debts, or charges which are enforceable against the estate. The manner in which the policy is drawn is immaterial so long as there is an obligation, legally binding upon the beneficiary, to use the proceeds in payment of such taxes, debts, or charges. The full amount of the proceeds so receivable, without the benefit of any exemption, forms a part of the gross estate, though all the premiums or other consideration wherewith the insurance was acquired may have been paid by a person other than the decedent. If the decedent procured insurance in favor of another person or corporation as collateral security for a loan or other accommodation, the insurance is considered to be receivable for the benefit of the estate. The amount of the loan outstanding at decedent's death will be deductible in determining the net estate, and the interest thereon will be deductible in accordance with the provisions of article 36."

power to borrow on the policies or to receive the cash surrender value of the policies was limited by the provisions of the judgment of the Fayette Circuit Court and of the several assignments executed by the decedent. If the proceeds of the policies which were received by Rosa Tucker Mason had exceeded the amount of decedent's obligation to pay. the. alimony fixed in the judgment of the Fayette Circuit Court, she would have held the excess in trust for the personal representatives of decedent. Vance, Handbook of the Law of Insurance; secs. 143–145. The mere fact that immediately prior to decedent's death the amount of the obligation secured exceeded the value of the policies pledged is "unimportant." *Nelson* v. *Commissioner*, *supra*. It should be pointed out that Rosa Tucker Mason's obligation to apply the proceeds upon the amount of decedent's obligation to pay the alimony fixed in the judgment of the Fayette Circuit Court gave decedent the right to the "economic benefits" under the policies and constituted an "incident of ownership" within the definition given in article 25 of Regulations 80.[3] See Paul, "Life Insurance and the Federal Estate Tax", *supra*.

Petitioners contend in the alternative that the amount fixed in the judgment of the Fayette Circuit Court as the alimony of Rosa Tucker Mason, i. e., $150,000, should be deducted from the value of the gross estate under section 303 (a) (1) (D) of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932 and section 403 (a) of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin.[4]

It is clear that the amount fixed as alimony in the judgment of the Fayette Circuit Court was an "indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such * * * indebtedness, is included in the value of the gross estate"

---

[3] ART. 25. *Taxable insurance.*—* * *

\* \* \* Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

[4] SEC. 393. For the purpose of the tax the value of the net estate shall be determined—

(a) in the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

(1) Such amounts—

(D) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth.

within the meaning of section 303 (a) (1) (D). Decedent's obligation to pay the amount fixed as alimony in the judgment of the Fayette Circuit Court was an "indebtedness", *Becknell* v. *Becknell*, 110 Ind. 42; 10 N. E. 414; *Coffman* v. *Finney*, 65 O. St. 61; 61 N. E. 155; the payment of the indebtedness was secured by the pledge of the policies; and it has been held that the proceeds of the policies should be included in the value of the gross estate. See *Estate of Harriet Blair Borland, supra.*

However, respondent contends that the indebtedness in question was founded upon the agreement between decedent and Rosa Tucker Mason; that the consideration for the agreement was the relinquishment by Rosa Tucker Mason of "marital rights in the decedent's property or estate"; that the consideration for the agreement was not a consideration "in money or money's worth" under section 303 (d) of the Revenue Act of 1926, as amended by section 804 of the Revenue Act of 1932, the pertinent provisions of which are set forth in the margin,[5] and that thus the amount of the indebtedness in question was not deductible under section 303 (a) (1) which requires that an indebtedness founded on an agreement be contracted "for an adequate and full consideration in money or money's worth."

Petitioners contend that the indebtedness in question was founded upon a liability imposed by law and not upon an agreement and that section 303 (a) (1) does not require that an indebtedness founded upon a liability imposed by law be contracted "for an adequate and full consideration in money or money's worth." In support of these contentions petitioners rely especially on *Edythe C. Young, Executrix*, 39 B. T. A. 230.

Section 303 (a) (1) of the Revenue Act of 1926 as originally enacted required that the deduction allowed in the case of any indebtedness be limited to the extent that such indebtedness was "incurred or contracted bona fide and for an adequate and full consideration in money or money's worth." Section 303 (a) (1) was amended by section 805 of the Revenue Act of 1932. As so amended section 303 (a) (1) required that the deduction allowed in the case of any indebtedness "when founded upon a promise or agreement" be limited to the extent that such indebtedness was "contracted bona fide and for an adequate and full consideration in money or money's worth." The legislative purpose for this amendment was stated in the reports of the Committee on Ways and Means and the Committee on Finance to be as follows:

A clarifying provision limiting the requirement of an adequate and full consideration in money or money's worth to liabilities founded on contract.

---

[5] SEC. 303. (d) For the purposes of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

The existing law might be open to a construction under which no claim against the estate would be deductible unless supported by an "adequate and full consideration in money or money's worth," but the real intent could hardly have been to deny the deduction of liabilities imposed by law or arising out of torts, and the amendment whereby the requirement of a consideration applies only where the liability is founded on contract is designed to clear up any doubt which may be thought to exist.[6]

In *Edythe C. Young, Executrix, supra*, until November 13, 1917, the decedent, who was a resident of Pima County, Arizona, was the husband of Katherine P. Young, who was a resident of Clinton County, Iowa. Katherine P. Young instituted divorce proceedings in Clinton County, Iowa, against the decedent. On November 12, 1917, the decedent and Katherine P. Young entered into a written contract under which it was agreed that if Katherine P. Young was granted a decree of divorce she should be awarded as alimony, among other things, the sum of $4,500 per annum during her lifetime. On November 13, 1917, the judge of the District Court for Clinton County, Iowa, entered a decree of divorce and for alimony, which provided, among other things, that Katherine P. Young was awarded as alimony the sum of $4,500 per annum during her natural life, to be paid in accordance with the terms of the written contract between the parties which was made a part of the decree. After decedent's death Katherine P. Young made a claim that she was entitled to be paid from the assets of the estate the sum of $4,500 per annum as long as she might live. The executrix of decedent's estate and Katherine P. Young entered into an agreement under which this claim was to be settled by the delivery of certain notes of the par value of $12,500. The agreement was approved by the Superior Court of the State of Arizona for the County of Pima. On the decedent's estate tax return a deduction was claimed in the amount of $12,500 on account of Katherine P. Young's claim against the estate. Respondent disallowed the deduction "on the ground that the claim is founded upon a promise or agreement to pay alimony during the lifetime of the decedent's former wife" and contended that the claim "was not incurred for adequate and full consideration in money or money's worth within the meaning of sections 804 and 805 of the Revenue Act of 1932, amending section 303 (a) (1) and (d) of the Revenue Act of 1926." The Board held that the claim was not founded upon a promise or agreement, but upon a liability imposed by law, and that the deduction was proper. The Board stated in part as follows (pp. 234–235):

It is true that Katherine P. Young and the decedent entered into an agreement during the pendency of the divorce proceedings which provided *inter alia* for the payment of alimony in the event a decree for divorce was granted, but

---

[6] Report of the Committee on Ways and Means, H. Rept. No. 708, 72d Cong., 1st sess., p. 48: Report of the Committee on Finance, S. Rept. No. 665, 72d Cong., 1st sess., p. 51.

the wife's right to alimony grows out of the legal duty of the husband to support her and not out of a promise or agreement. *Martin* v. *Martin*, 65 Iowa, 255; 21 N. W. 595; *Wilson* v. *Hinman*, 182 N. Y. 408; 75 N. E. 236; *Wagner* v. *Wagner*, 132 Mich. 343; 93 N. W. 889; *Stahl* v. *Stahl*, 114 Ill. 375; 2 N. E. 160; *Emerson* v. *Emerson*, 120 Md. 584; 87 Atl. 1033. "The judgment for alimony does not create a new obligation or duty in that respect. It but determines the extent of the existing obligation, and regulates the manner of its performance." *Martin* v. *Martin, supra*.

Even if the parties have settled their property rights, and have made provision for the support of the wife by a written agreement, the court may disregard the agreement and award such alimony as it deems right. In such case the right to alimony is predicated on the action of the court and not upon the agreement of the parties. *Douglas* v. *Willcuts*, 296 U. S. 1; *Parsons* v. *Parsons*, 152 Iowa, 68; 131 N. W. 17; *Wilson* v. *Wilson*, 40 Iowa 230. * * *

\* \* \* \* \* \* \*

It would seem to follow that the claim which Katherine P. Young asserted against the decedent's estate rested immediately upon the judgment and decree of the Iowa court, which in turn was a judicial determination of the amount required from decedent to discharge an obligation imposed by law. Neither the obligation, nor the amount thereof, was created or determined by the agreement of the parties. The law imposed the one and the decree of court determined and adjudicated the other.

In our opinion the decision in *Edythe C. Young, Executrix, supra,* is controlling. In Kentucky, as in Iowa, the husband's obligation to pay alimony arises out of his legal duty to support his wife. *Collins* v. *Collins*, 279 Ky. 139; 130 S. W. (2d) 37; *Muir* v. *Muir*, 133 Ky. 125; 92 S. W. 314, in which alimony was defined as "that provision which the law makes for the support of the wife, or of her who was the wife, out of the estate of the husband after separation in lieu of his common law obligation to support her as his wife if they should have continued living together." Moreover, although the Fayette Circuit Court in its judgment did fix the alimony of Rosa Tucker Mason at the gross sum of $150,000 in accordance with the agreement entered into between decedent and Rosa Tucker Mason, the court was not bound by that agreement in fixing the amount of the alimony. See *Wallace* v. *Wallace*, 74 N. H. 256; 67 Atl. 580; *Phillips* v. *Phillips*, 39 R. I. 92; 97 Atl. 593; sec. 2122, Carroll's Kentucky Statutes; Schouler's, Marriage, Divorce, Separation and Domestic Relations, 6th ed., sec. 1815. Therefore, as was stated in *Edythe C. Young, Executrix, supra,* "Neither the obligation, nor the amount thereof, was created or determined by the agreement of the parties. The law imposed the one and the decree of court determined and adjudicated the other."

In view of the conclusion that the indebtedness in question was not founded "upon a promise or agreement," it is not necessary to consider the further contention advanced by respondent that the indebtedness was not contracted "for an adequate and full consideration in money or money's worth."

The final question is whether the amount of $750 which petitioners paid to the decedent's widow in accordance with section 1403 of Carroll's Kentucky Statutes should be deducted from the value of the gross estate under section 303 (a) (1) (E) of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932 and section 403 (a) of the Revenue Act of 1934. Section 303 (a) (1) (E) as so amended is set forth in the margin.[7]

On their estate tax return petitioners took a deduction of $750 paid the widow of decedent under section 1403 of Carroll's Kentucky Statutes, the pertinent provisions of which are set forth in the margin.[8] The deduction was disallowed by respondent.

In *Allentown National Bank et al., Executors*, 37 B. T. A. 750, the executors of the decedent claimed as a deduction $500 paid the widow of the decedent under section 12 (a) of the Pennsylvania Fiduciaries Act of 1917, which section was quite similar to section 1403 of Carroll's Kentucky Statutes. The Board sustained the disallowance of the deduction because there was no evidence "that the $500 was either 'reasonably required' or 'actually expended' for the support of the widow."

In our opinion the decision in *Allentown National Bank et al., Executors, supra*, is controlling. Although the $750 was paid to the decedent's widow, there is no evidence whatsoever that the $750 was either "reasonably required" or "actually expended" for her support.

On their estate tax return petitioners took a deduction of $4,000 for miscellaneous administration expenses. Respondent disallowed the deduction. The parties have stipulated that petitioners are entitled

---

[7] Sec. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—
(1) Such amounts—

\* \* \* \* \* \* \*

(E) Reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent.

[8] Sec. 1403. Personal estate of intestate; surplus; how distributed; articles or money set apart to widow or children; appraisement; renunciation of will.—Where any person shall die intestate as to his personal estate, or any part thereof, the surplus, after payment of funeral expenses, charges of administration and debts, shall pass and be distributed among the same persons, and in the same proportions, to whom and in which real estate is directed to descend, except as follows:

\* \* \* \* \* \* \*

Fifth. Personal property or money on hand or in bank to the amount of seven hundred and fifty dollars ($750) shall be exempt from distribution and sale, and shall be set apart by the appraisers of the estate of an intestate to his widow and infant children, or if no widow, to his infant children or child surviving him. And a like amount of property or cash shall be exempt from distribution and sale and shall be set apart by them to the surviving infant children or child of a widow who dies intestate.

The appraisers shall state in their appraisement the money or the articles and value of each, set apart by them to the widow, or infants, separately to the articles appraised for sale, but if the widow be present at the time of the appraisement, or any one authorized by her in writing, she may make her selection out of the property appraised to the amount of said seven hundred and fifty dollars ($750.00) and said appraisers shall so report. The provisions of this section shall apply to cases where the husband dies testate and the widow renounces the provisions of the will in the time prescribed by law.

to deduct from the gross estate $3,270.43 as expenses actually and necessarily incurred in the administration of the estate.

In the statement attached to the notice of deficiency respondent computed a gross deficiency in estate tax of $87,233.89 and stated that no allowance was made for a credit on account of state estate, inheritance, legacy, or succession taxes paid, but that if the full 80 percent credit were allowed, the net deficiency in estate tax would be $38,400.01. However, in the notice of deficiency respondent actually determined a deficiency in estate tax of $38,400.01. In the answer respondent alleged that petitioners had not paid any state estate, inheritance, legacy, or succession taxes and that respondent had erroneously allowed the full 80 percent credit in determining the amount of the deficiency and prayed that the Board allow an increased deficiency in estate tax of $87,233.89. The parties have stipulated that petitioners paid $21,529.47 to the State of Kentucky as inheritance and estate taxes and $7,500 to the State of Washington as inheritance and estate taxes, or a total of $29,029.47. Upon computation under Rule 50 petitioners should be allowed a credit in that amount.

*Decision will be entered under Rule 50.*