ELEANOR B. KINGSLEY *v.* DANIEL T. KINGSLEY

[No. 633, September Term, 1979.]

*Decided April 9, 1980.*

The cause was argued before THOMPSON, WILNER and MacDANIEL, JJ.

*Roger W. Titus* for appellant.

*Harvey A. Jacobs,* with whom were *Belli, Weil & Jacobs* on the brief, for appellee.

MacDaniel, J., delivered the opinion of the Court.

On December 16, 1977, Daniel T. Kingsley, appellee, filed a bill of complaint for a divorce *a vinculo matrimonii* against Eleanor B. Kingsley, appellant, alleging a one year voluntary separation of the parties as a basis for this action. Appellant filed an answer to the original bill of complaint on January 11, 1978, and then eventually filed an amended answer on August 16, 1978. On September 15, 1978, and again on February 8, 1979, testimony was taken in the Circuit Court for Montgomery County. The chancellor filed an opinion and order, dated April 17, 1979, granting a divorce *a vinculo matrimonii* to the appellee, and further ordering that the terms of a voluntary separation agreement between the parties, dated December 1, 1976 (amended April 22, 1977), be incorporated into the decree.

In the opinion and order of April 17, 1979, the chancellor ruled that the "Separation Agreement" was not induced by fraud, mistake, or coercion; that the amounts provided for child support were adequate and reasonable; that the amount provided for alimony was fair and reasonable; that the "Separation Agreement" was not inequitable; that the evidence was not sufficient to establish that the husband misrepresented or materially withheld the true nature of his income, either at the time of the execution of the "Agreement" or at the time of the hearing in this matter; that the evidence was not sufficient to constitute "changed circumstances" such that warrant an increase in the support and alimony amounts as provided in the "Agreement."

Subsequently, on May 2, 1979, the chancellor filed a revised opinion and order that affirmed the April 17, 1979, opinion and order, except that portion dealing with child support. The "Separation Agreement" had provided for $1300.00 per month child support but only until the "dwelling house" was sold. It then provided for $500.00 per month child support. In the original opinion and order the

chancellor erroneously considered the $1300.00 per month child support, but the "dwelling house" had been sold and he should have considered the $500.00 per month child support. In his revised opinion and order the chancellor noted that the "Agreement" increased the alimony for the wife after the "dwelling house" was sold, but decreased the child support from $1300.00 to $500.00 per month. Based upon this, the chancellor increased the child support by $250.00 per month which therefore raised the $500.00 per month to $750.00 per month for child support.

On appeal, appellant states her complaints as follows:

"I. In a non-culpatory divorce action where the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor makes an award of alimony and child support without any findings as to either the needs of the wife and children of the parties or the husband's ability to pay.

II. In a non-culpatory divorce action where the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor treats the agreement of the parties with respect to alimony and child support as if it were a prior decree, declining to modify the amounts contained therein except upon a showing of changed circumstances or proof of unconscionability.

III. In a non-culpatory divorce action where the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor refuses to admit evidence of the standard of living of the parties prior to the separation.

IV. In a non-culpatory divorce action where the parties have executed an agreement providing

for alimony and child support, it is an abuse of discretion and reversible error where the chancellor refuses to admit evidence of substantial assets which the husband presently controls as executor of an estate, the income from which he currently enjoys, and which he will inherit in the immediate future.

V. In a non-culpatory divorce action where the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor refuses to admit evidence of the fault which destroyed the home.

VI. In a non-culpatory divorce action where the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor fails to tax as part of the costs of the case the cost of a deposition admitted into evidence."

These complaints can be summarized as follows: (1) that the chancellor failed to make findings as to her needs or the needs of the children; (2) that the chancellor treated the separation agreement as a prior decree and would only admit evidence of changed circumstances since the date of the separation agreement; (3) that the chancellor failed to admit evidence of the standard of living of the parties prior to the execution of the separation agreement; (4) that the chancellor failed to admit evidence of the appellee's expectations from inheritance; (5) that the chancellor failed to admit evidence of the fault which destroyed the home, and (6) that the chancellor failed to tax the appellee with the costs of a deposition which was admitted into evidence.

Before considering these complaints, a brief factual background is necessary.

Appellant (wife) and appellee (husband) were married on January 26, 1955, and six children were born of this marriage. At the time of the hearing in this case, there were

three children living at home with the appellant, whose ages were 7, 12 and 18. Pursuant to a written separation agreement, executed on December 1, 1976, the parties separated on or about December 14, 1976. Both parties were represented by counsel at that time, and both have continued with representation up to the present. This separation agreement, on its face, exhibited a comprehensive, exhaustive and knowledgeable consideration of all of the rights of the parties, including but not limited to alimony and child support. When the appellee filed the bill of complaint on December 16, 1977, copies of the separation agreement were attached, with a request to incorporate the separation agreement into any divorce decree that may be granted. Also filed in this case was an amendment to the separation agreement that had been executed by the parties on April 22, 1977. The appellant filed an answer to the bill of complaint on January 11, 1978, admitting all allegations contained therein, and praying that the court grant such relief as may be just and proper. On August 16, 1978, appellant filed an amended answer to the bill of complaint which, for the first time, in paragraph 7 stated, "Further answering, Defendant [appellant] alleges that the provisions contained in the voluntary separation and property settlement agreement of December 1, 1976, for her support and support of the minor children of the parties are not adequate to meet their present needs." This amended answer contained a prayer, requesting an increase in alimony and child support.

## I.

Of the six alleged errors, numbers II, III and V interrelate and will be considered together. The chancellor was faced with an action for divorce, a request for an increase in child support and alimony, and the status of a separation agreement valid on its face and not challenged as being the result of fraud, mistake, coercion, or irregularity. Appellant introduced testimony in an attempt to prove her allegation that appellee misrepresented or materially withheld the true nature of his income both at the time of the execution

of the separation agreement and at the time of the hearing. The chancellor found this allegation without merit and we cannot say this was an abuse of discretion or clearly erroneous. Md. Rule 1086.

Before considering any increase the chancellor next had to determine whether to adopt the terms of the separation agreement relating to child support and alimony as being fair and reasonable at the time of the execution of the separation agreement. The controlling law in Maryland is contained in *Eaton v. Eaton,* 34 Md. App. 157 (1976), where this Court adopted the trial judge's opinion, which stated:

> " 'By virtue of the common law and Section 28, Article 16, Md. Code,[1] separation and property settlement agreements not disclosing on their face any injustice or inequity are presumptively valid and the burden to prove that their execution was caused by coercion, fraud or mistake is upon the party making the allegation.' " *Id.* at 162.

*See also Jackson v. Jackson,* 14 Md. App. 263 (1971).

Appellant apparently takes the position that the chancellor should allow testimony of the standard of living of the parties prior to the execution of the separation agreement, the circumstances leading up to the separation and the fault that destroyed the home before determining whether the separation agreement was fair and reasonable.

---

1. Md. Ann. Code art. 16, § 28, in pertinent part reads as follows:
"§ 28. *Effect of agreement and settlements between parties.*

Any deed or agreement made between husband and wife respecting alimony, support, maintenance, property rights, or personal rights, or any settlement made in lieu of alimony, support, maintenance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose, and the deed or agreement may not be a bar to an action for divorce, either a vinculo matrimonii or a mensa et thoro, as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of the deed or agreement, or whether at the time of making the deed or agreement the parties were living together or apart. However, whenever any deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties, the court has the right to modify the deed or agreement in respect to the infants as to the court may seem proper, looking always to the best interests of the infants."

Failing to do this, reasons the appellant, the chancellor gave *"res judicata"* effect to the separation agreement. With no contention that all of these elements were not fairly taken into consideration by the parties at the time of the execution of the separation agreement, it would be absurd to adopt appellant's position. Under the circumstances of this case, the court having concluded that there was no material misrepresentation or concealment of assets, to allow reference to conditions which existed prior to a separation agreement, fair and reasonable on its face, would undermine the presumptive validity and binding effect of the separation agreement. We should encourage the litigants in a domestic situation to seek proper legal assistance and enter into a fair and reasonable settlement of their disputes; evidently the Legislature felt so in enacting Art. 16, § 28, *supra*. The chancellor, under the facts existing, did not "rubber stamp" or give *res judicata* effect to the separation agreement. He found it to be fair and reasonable as to alimony and child support.

Once finding the separation agreement to be fair and reasonable, the chancellor then had to rule as to what evidence was admissible in relation to appellant's request for an increase in alimony and child support. Clearly only evidence of "change of circumstances" since the execution of the separation agreement would be relevant.

At this juncture appellant still complains, arguing that "fault that destroyed the home" by Maryland law, must be considered as it relates to *amount* in any "award of alimony" determination. We next address this complaint.

## II.

Appellant has alleged that "in a non-culpatory divorce action when the parties have executed an agreement providing for alimony and child support, it is an abuse of discretion and reversible error where the chancellor refuses to admit evidence of the fault which destroyed the home." As the separation agreement established *entitlement* to alimony (not disputed by either party), appellant's position

must be that "fault which destroyed the home" is a necessary element to determine the *amount* of alimony.

Appellant contends the law in Maryland is clear as to the factors necessary for this determination. We begin our analysis of these factors as they were stated in *Timanus v. Timanus,* 178 Md. 640 (1940):

> "It is a general rule that a court, before determining the award of alimony, should consider the maintenance of the wife in accordance with the husband's duty to support her suitably, together with the husband's wealth and earning capacity. In addition to the financial circumstances of the parties, the court should also usually consider their station in life, their age and physical condition, ability to work, the length of time they lived together, the circumstances leading up to the separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children. The award should be made in an amount sufficient to support the wife in reasonable comfort in her station in life. But when the husband owns no property, the court can not base the award of alimony upon a hope of gratuities or a mere surmise that he will receive them. The wife is entitled to demand such support as her husband is reasonably able to furnish from his property or earnings. In applying for alimony, a wife is not asking for favors, but demanding rights, and these rights should be considered in connection with her husband's capacity. *Wygodsky v. Wygodsky,* 134 Md. 344, 347, 106 A. 698, 699; *Roberts v. Roberts,* 160 Md. 513, 525, 154 A. 95, 100; *Muir v. Muir,* 133 Ky. 125, 92 S.W. 314, 909 [sic]; *Hooper v. Hooper,* 102 Wis. 598, 78 N.W. 753, 755; *Boyden v. Boyden,* 50 R.I. 326, 147 A. 621." *Id.* at 642-43.

It would appear that *Timanus* is the first case in Maryland that uses the language, "In addition to the financial

circumstances of the parties, the court should also *usually* consider their station in life, their age and physical condition, ability to work, the length of time they lived together, the circumstances leading up to the separation, *the fault which destroyed the home,* and their respective responsibilities for the care and support of the children." (Emphasis added.) The only two Maryland cases quoted by *Timanus* in reference to the above factors are *Wygodsky v. Wygodsky,* 134 Md. 344 (1919) and *Roberts v. Roberts,* 160 Md. 513 (1931). In the *Wygodsky* case, the only issue concerned the husband's contention that the amount of alimony awarded the wife was excessive. The Court found this contention without merit and stated at 347:

> "The award or the amount of an allowance as alimony is largely within the judicial discretion and rests upon all the facts and circumstances of each case having regard 'to the husband's income, the estate of the wife, the age and condition of the parties, the disposition and care of the children and the ability of the parties to care for themselves.' "

In *Roberts,* the Court determined that the wife was entitled to the divorce and in considering the amount of alimony, stated at 525:

> "While we have for the reasons stated condemned the form in which alimony was decreed in this case, it does not follow that the expenses chargeable against the wife or against property which she and her husband hold as tenants by the entireties are to be disregarded. On the contrary, all such expenses are to be considered, together with such factors as the financial circumstances of the parties, their station in life, expenses which the wife has been compelled to incur as a result of the husband's failure to adequately provide for his family, the age and physical condition of the parties and their children, and the expense of educating the children, and an allowance, based upon those factors and all other facts and circumstances which may

> legitimately affect them, made separately for the wife and children which will support them in reasonable comfort in their station in life. 1 *R. C. L.* *"Alimony,"* secs. 77, 78."

We conclude, then, that neither of these cases is authority for considering "fault that destroyed the home" as an element in determining the *amount* of alimony to be awarded. The *Timanus* case also referred to three out-of-state cases, *Muir v. Muir,* 133 Ky. 125, 92 S.W. 314; *Boyden v. Boyden,* 50 R.I. 326, 147 A. 621, and *Hooper v. Hooper,* 102 Wis. 598, 78 N.W. 753. The *Hooper* and *Boyden* cases do use the "fault" language in listing the factors to be considered but neither of those cases actually involved a "fault" situation. The *Muir* case is the only case cited by *Timanus* that actually talks about the "fault" of the husband in awarding additional alimony to the wife. However, in that case the husband, unbeknown to the wife, had contracted syphilis and, in his relations with his wife, she (and later one of the children) showed symptoms of having the disease. The *Muir* Court found the "syphilis issue" relevant because it tainted the wife and child and threatened their life and future usefulness. *Muir* reasons that where "fault" creates an economic problem, it can be considered in awarding alimony. It is further interesting to note that the reason for granting the divorce had nothing to do with the syphilis, as the divorce was granted on the basis of the husband's later adulterous relationships, even after the wife had knowledge that he had syphilis.

In *Timanus* the wife had been granted a divorce *a mensa et thoro* and awarded permanent alimony. She appealed contending the amount of alimony awarded was not sufficient for her maintenance and not commensurate with the means and station in life of her husband. The case does not even discuss "fault," but merely lists those elements quoted *supra* that should be considered.

The factors to be considered in an award of alimony, including "fault that destroyed the home" first stated in *Timanus* have been repeated in many other Maryland cases, too numerous to cite, up to the present time. There are no

Maryland cases in which either Appellate Court has expressly increased an alimony award based on the fault that destroyed the home. Many of these cases involve complaints by the husband that the amount of alimony awarded to the wife was excessive. In all of these cases the Courts have reviewed the income and assets of the husband, the income and assets of the wife, the needs of the wife, as well as the husband's ability to pay, and then determined the correctness of the amount of alimony that had been awarded. The "fault that destroyed the home" was not discussed, but merely listed as among those factors to be considered in an award of alimony. *See Willoughby v. Willoughby,* 256 Md. 590 (1970); *Mays v. Mays,* 232 Md. 122 (1963); *Newmeyer v. Newmeyer,* 216 Md. 431 (1958); *Link v. Link,* 35 Md. App. 684 (1977); *Kramer v. Kramer,* 26 Md. App. 620 (1975); *Flood v. Flood,* 24 Md. App. 395 (1975).

Many of the cases that list "fault that destroyed the home" as a factor in determining an award of alimony, also state that "alimony is based upon need and is never a punitive measure." *Flanagan v. Flanagan,* 270 Md. 335 (1973); *Bowis v. Bowis,* 259 Md. 41 (1970); *Burton v. Burton,* 253 Md. 233 (1969); *Danziger v. Danziger,* 208 Md. 469 (1955); *Sugarman v. Sugarman,* 197 Md. 182 (1951); *Waters v. Waters,* 191 Md. 436 (1948); *Altman v. Altman,* 36 Md. App. 538 (1977), *aff'd,* 282 Md. 483 (1978); *Hall v. Hall,* 32 Md. App. 363, *cert. denied,* 278 Md. 723 (1976); *Quinn v. Quinn,* 11 Md. App. 638, *cert. denied,* 262 Md. 749 (1971).

A typical example of this language can be seen from *Waters, supra,* 191 Md. at 440, where it is stated, "Although, in this case, the husband has been found guilty of adultery, the awarding of alimony is never a punitive measure." Following this statement, the *Waters* case went on to list the factors as stated in *Timanus,* which include "the fault which destroyed the home."

In *Altman v. Altman, supra,* the husband was found to be at fault. In reviewing the alimony award the Court said at 550, "We do, however, have the responsibility of determining whether the chancellor in the exercise of his sound discretion correctly considered the criteria established for the determination of the amount of alimony to be

awarded; whether he considered the needs of the wife, the ability of the husband to pay and has avoided the use of the alimony award as a means of punishment."

In *Sugarman v. Sugarman, supra,* at 188, the Court said, "His [husband's] conduct leading up to the divorce may be considered, but he cannot be penalized or punished by the amount of alimony awarded, for 'alimony is never a punitive measure'."

After this review of the Maryland decisions stating that "alimony can never be a punishment" and that the factor of "fault that destroyed the home" is relevant in an award of alimony, we find no basis for the conclusion suggested by appellant that "fault that destroyed the home" is necessarily relevant to amount of alimony to be awarded. We therefore conclude that "fault that destroyed the home" is a relevant element to determine *entitlement* to alimony, but can only be considered as an element in the *amount* of alimony to be awarded when it affects the *economic* needs of the party seeking alimony.

## III.

Here, appellant makes the broad allegation that the chancellor made an award of alimony and child support without any findings as to either the needs of the wife and children of the parties, or the husband's ability to pay. From our prior rulings, we are now only concerned with the appellant's request for an increase from the amounts contained in the separation agreement. To obtain an increase it was incumbent upon appellant to present evidence of "change of circumstances" since the execution of the separation agreement. Testimony of need was introduced, but the chancellor evidently felt it was insufficient to show change of circumstances. From a review of the testimony, we cannot say the chancellor abused his discretion or was clearly erroneous. Md. Rule 1086.

## IV.

Appellant is correct that in *Benner v. Benner,* 37 Md. App. 367 (1977), this Court considered for the first time the

issue of whether a chancellor may properly consider an expected inheritance in determining an award of alimony. *Benner* stated:

"Without evidence as to when the estate will be distributed, the chancellor had no basis upon which to gauge the effect of this expected inheritance on the *present* needs of appellant. It is clear, however, that this mere expectation of inheritance afforded appellant no financial support at the time alimony was awarded. The fact that appellant may not be destitute 'over any long term' is virtually irrelevant. Alimony is to be awarded based on circumstances existing at the time of the award. If those circumstances change, the award can be modified." 37 Md. App. at 371.

There was no evidence to establish when either estate would be distributed other than within a few years. The income from these estates was already accounted for in the overall financial picture. From this evidence, we cannot say the chancellor abused his discretion or was clearly erroneous in not taking into account the expected inheritance. Md. Rule 1086.

### V.

When questioned concerning which party would be assessed the costs of a deposition of the appellee, portions of which were placed in the record, the chancellor responded, "It will be taxed. I haven't decided against whom." The order and opinion of the chancellor did not mention costs, nor of what the costs consisted. We therefore must remand for determination of this narrow issue.

*Judgment affirmed in part, and remanded in part for further consideration consistent with this opinion.*

*Costs divided equally between the parties.*