LEWIS S. ROSENSTIEL, Respondent, v. SUSAN L. ROSENSTIEL, Appellant. (Annulment Action.)

SUSAN L. ROSENSTIEL, Appellant, v. LEWIS S. ROSENSTIEL, Respondent. (Injunction Action.)

First Department, October 21, 1964.

*Louis Nizer* of counsel (*Walter S. Beck* and *Herbert N. Bobrow* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for appellant.

*Roy M. Cohn* of counsel (*Daniel J. Driscoll, Joel S. Stern* and *John A. Vassallo* with him on the brief; *Saxe, Bacon & O'Shea,* attorneys), for respondent.

BOTEIN, P. J.  Plaintiff husband and defendant wife were married in New York on November 30, 1956.  On April 26, 1962 plaintiff brought an action to annul the marriage, alleging that on January 12, 1945 defendant married one Felix Ernest Kaufmann and remains married to him.  In answer, defendant pleaded a decree of divorce obtained by Kaufmann on October 2, 1954 in the First Civil Court, District of Bravos, City of Juarez, State of Chihuahua, Mexico, on grounds of " ill treatment and incompatibility of characters."  Consolidated with the annulment action is an injunction action by defendant to restrain plaintiff from suing her for matrimonial relief in any jurisdiction other than New York.  After submission of all of the evidence the trial court held that there was " not any material issue of fact for this jury to decide "; and dismissed the jury.  The court concluded that the Mexican decree had been rendered by a tribunal without jurisdiction, declined therefore to recognize it, and entered a judgment, from which defendant takes this appeal, granting the requested annulment and dismissing the injunction action.

The validity of the questioned decree under Mexican law is not disputed.  Recognition has been refused primarily on the ground that neither Kaufmann nor defendant had been domiciled in the State of Chihuahua, and, in the view of the trial court, domicile is " the *sine qua non* requisite for jurisdiction to grant a divorce ".  Undeniably Kaufmann and defendant were not Mexican domiciliaries as the concept of domicile is generally understood.  On the same day that Kaufmann entered Mexico he returned to the United States, in the interim presenting his divorce petition to the court in the City of Juarez together with a certificate issued by the office of the municipal president showing that he was registered in the official book of residents of the city.  On the following day defendant appeared in the suit by an attorney, who on her behalf submitted to the court's juris-

diction and admitted the allegations of the complaint. The decree was also entered on the same day.

As stated in *Drew* v. *Hobby* (123 F. Supp. 245, 247), "it was long ago decided in New York that lack of domicile is not necessarily a bar to the recognition of a foreign divorce." As authority for the statement the court correctly cited *Gould* v. *Gould* (235 N. Y. 14, 29), where the Court of Appeals, discussing divorce judgments of the courts of France, had said: "Even though it be assumed that we are not required because of the absence of domicile to give effect to their judgments, we are not prohibited from doing so where recognition, in conformity to the principle of comity, would not offend our public policy."[1]

The fact pattern in *Gould* v. *Gould* is of course remote from that before us. The Goulds, though not domiciled in France, had resided there for years and the divorce was granted for adultery. But the Court of Appeals was quite aware of the possible impact of its decision, expressly leaving open for future determination whether a decree would contravene our policy if based on a transitory presence in the rendering jurisdiction or on grounds other than adultery (235 N. Y. 14, 29, 30). New York policy on such questions was thereafter expounded in *Glaser* v. *Glaser* (276 N. Y. 296), in which the wife charged expressly "that the main purpose of her husband in going to the foreign State was to procure the divorce" (p. 299); and this policy was summed up in *Matter of Rhinelander* (290 N. Y. 31, 36–37) thus: "It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign states when rendered on the appearance of both parties, even when the parties go from this State to the foreign state for the purpose of obtaining the decree and do obtain it on grounds not recognized here." Since it is common knowledge that the parties, with rare exceptions, return here, the quotation indicates rather plainly New York's indifference, in the juridical sense, as to whether they achieved domiciliary status in the foreign State, if both appeared there.

Accordingly, domicile as distinguished from a visit has been held to be a jurisdictional requisite where but one spouse enters the foreign country and proceeds ex parte (*Imbrioscia* v. *Quayle*, 278 App. Div. 144, affd. 303 N. Y. 841; *Rosenbaum* v. *Rosenbaum*, 309 N. Y. 371); and recognition will be refused the "mail-order divorce", so alien to our legal tradition, where neither spouse

---

[1] The opinion by CONWAY, J., dissenting, in *Matter of Rathscheck* (300 N. Y. 346, 355) shows clearly that he did not intend his remarks about domicile in *Caldwell* v. *Caldwell* (298 N. Y. 146, 149) to be taken as a departure from the doctrine of *Gould* v. *Gould*.

enters the foreign country (*Caldwell* v. *Caldwell*, 298 N. Y. 146, 148). In the last-cited case the court noted: "Neither the defendant nor his wife visited Mexico. The decree contains no recital that either party to the action was even physically present or domiciled in Mexico." Our courts, however, without inquiring into domicile, have frequently recognized Mexican decrees if, as here, the petitioning spouse has appeared in person and the answering spouse in person or by attorney (*Leviton* v. *Leviton*, 6 N. Y. S. 2d 535, mod. 254 App. Div. 670; *Laff* v. *Laff*, 5 Misc 2d 554 [Schleppi, J.], affd. 4 A D 2d 874; *Heine* v. *Heine*, 231 N. Y. S. 2d 239, affd. 19 A D 2d 695; *Busk* v. *Busk*, 229 N. Y. S. 2d 904, mod. 18 A D 2d 700; *Matter of Fleischer*, 192 Misc. 777; *Bowen* v. *Bowen*, 22 Misc 2d 496; *Weibel* v. *Weibel*, 37 Misc 2d 162; *Mountain* v. *Mountain*, 109 N. Y. S. 2d 828; *Caswell* v. *Caswell*, 111 N. Y. S. 2d 875; *Costi* v. *Costi*, 133 N. Y. S. 2d 447; *Fricke* v. *Bechtold*, 8 Misc 2d 844; *Sonnenberg* v. *Sonnenberg*, 203 N. Y. S. 2d 118; *Skolnick* v. *Skolnick*, 24 Misc 2d 1077; see *Drew* v. *Hobby*, 123 F. Supp. 245, *supra*).

The decisions last cited and others — rendered at various times during the past quarter-century — of course reflect impressive and reiterated judicial opinion that recognition of the decree with which this case is concerned would be consistent with New York's public policy. No change in public policy has been identified for us; and it is significant that despite the continuing awareness of those decisions in the field of law and in the community, the Legislature has never sought to limit their doctrine. (Compare the course of decision in the United States Supreme Court summarized in *Klarish* v. *Klarish*, 19 A D 2d 170 [Bergan, J.], affd. 14 N Y 2d 662.)

The trial court also indicated that Kaufmann and defendant had been guilty of collusion and violation of section 51 of the Domestic Relations Law (now General Obligations Law, § 5-311); but in our opinion the evidence does not sustain such a finding (see *Matter of Rhinelander*, 290 N. Y. 31, *supra*; *Graham* v. *Hunter*, 266 App. Div. 576; *Dodge* v. *Dodge*, 98 App. Div. 85; *Yates* v. *Yates*, 183 Misc. 934 [Van Voorhis, J.]; *Heine* v. *Heine*, *supra*).[2]

The annulment should be vacated and the injunction action reinstated, on the law and on the facts, without costs. Settle order on notice.

---

[2] Speaking for myself, were it necessary to reach the estoppel issue, I would agree with the policy considerations expressed by Mr. Justice Valente in his concurring opinion, although I am not fully convinced that the present state of the law permits such a result.

VALENTE, J. (concurring).  I agree with the majority in the conclusion as to the validity of the Mexican divorce.  However, I would deny an annulment to plaintiff husband upon an additional ground.  This court, in *Presbrey* v. *Presbrey* (6 A D 2d 477, affd. 8 N Y 2d 797) and *Packer* v. *Packer* (6 A D 2d 464) expressly recognized the power in a court of equity to exercise discretion in granting annulments and to apply principles of equitable estoppel, particularly in a case where the party seeking affirmative relief had knowingly participated in or had acted upon what he was then seeking to have declared as null.

That discretion to deny equitable relief should properly be exercised in cases such as the instant one both from the standpoint of our public policy to preserve existing marriages and from the decidedly inequitable conduct of the plaintiff who entered into the marriage fully aware of the circumstances and the legal doubts surrounding the obtaining of the Mexican divorce decree.  The evidence established that plaintiff knew of defendant's prior Mexican divorce before the parties were married in November, 1956.  In fact, before the parties went to the license bureau, plaintiff arranged to have defendant bring the Mexican divorce decree to his attorney for examination and opinion.  Moreover, the parties had the Corporation Counsel's office approve their respective divorce decrees before a marriage license was issued.  After having been married for five and one-half years, plaintiff commenced this action in April, 1962 for an annulment.  To grant an annulment herein would, in effect, import into the law a species of marriage terminable at the will of one spouse by the simple expedient of changing his attorney.

The law concerning the proper application of any principle of equitable estoppel in matrimonial actions involving claimed invalid foreign decrees of divorce has been in a confused and unsettled state.  (See 44 Cornell L. Q. 150–157; Hofstadter and Richter, " Estoppel in New York Matrimonial Litigation ", N. Y. L. J., Feb. 10, 11, 13, 1958.)  Estoppel has been applied against one who has appeared in the challenged divorce proceeding (*Krause* v. *Krause,* 282 N. Y. 355) or who has taken advantage of the decree of divorce by remarrying (*Carbulon* v. *Carbulon,* 293 N. Y. 375).  In Preliminary Draft No. 1 (1953) of the Restatement, Second, Conflicts of Laws, § 112, the rule is suggested that " [a] person may be precluded from questioning the validity of a divorce decree if, under the circumstances of the case, it would be inequitable to permit him to do so."

I would hold that one who knowingly accepts the benefits of a bilateral-appearance Mexican divorce decree, with awareness

of the legal doubts with respect to it, even though not a party to the divorce proceeding, should not thereafter be permitted to change his position and challenge that decree before a court of equity. (See 77 Harv. L. Rev. 1531, 1534; 64 Col. L. Rev. 968, 973.)

There may be countervailing considerations of public policy, not present in the instant case, which preclude the application of any equitable estoppel. Thus, cases involving " mail order " divorces stand on a different footing since in such instances " [t]here is not even the slightest semblance or color of jurisdiction justifying action by a court ". (*Caldwell* v. *Caldwell*, 298 N. Y. 146, 150–151.) So, too, where the subsequent marriage occurs before a divorce has become final, the attempted marriage is " wholly without validity from its beginning " and there is no " room for any counteractive estoppel ". (*Landsman* v. *Landsman*, 302 N. Y. 45, 48.)

However, where, as here, the recognition of the validity of the Mexican divorce depends upon the exercise of comity — and, as the opinion of BOTEIN, P. J., points out our courts have frequently recognized such decrees — a spouse should not be permitted, on equitable principles, collaterally to attack such a decree where the subsequent marriage was entered into with knowledge of the circumstances under which the divorce decree was obtained. Thus, irrespective of the conclusion of the majority as to the validity of the Mexican divorce decree, I would have denied plaintiff an annulment of the marriage in this case because he was equitably estopped from questioning the validity of the Mexican divorce decree obtained by his wife from her former husband.

McNALLY, J. (concurring). I concur in the result on the ground that the bilateral Mexican divorce decree is grounded on a claim of residence, colorable though it may be, and a finding of residence by the Mexican court. In my judgment this distinguishes the instant case from *Wood* v. *Wood* (21 A D 2d 627), decided herewith, where there was no claim of residence and no finding of residence on the part of either party by the Mexican court.

STEVENS and STALEY, JJ., concur with BOTEIN, P. J.; VALENTE and McNALLY, JJ., concur on additional grounds in separate opinions.

Annulment vacated and injunction action reinstated, on the law and on the facts, without costs. Settle order on notice.