Maria Julia ROSENBAUM, Appellant,

v.

Francis N. ROSENBAUM, Appellee.

Francis N. ROSENBAUM, Appellant,

v.

Maria Julia ROSENBAUM, Appellee.

Nos. 3625, 3626.

District of Columbia Court of Appeals.

Argued March 15, 1965.

Decided May 12, 1965.

**6**

Saul M. Schwartzbach, Washington, D. C., for Maria Julia Rosenbaum.

James C. Toomey, Washington, D. C., for Francis N. Rosenbaum.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

Maria Julia Rosenbaum (hereafter referred to as appellant) and Francis N. Rosenbaum (hereafter referred to as appellee) were married in Rye, New York, on October 19, 1951. Subsequently they separated and on June 8, 1953, entered into a separation agreement pursuant to which appellee was to pay appellant $600 a month for her separate maintenance. Thereafter he arranged for and obtained a Mexican divorce. He complied with the agreement until November 1961 when he failed to pay the monthly support sum called for, and his default continued until the date of the trial.

On February 8, 1963, appellant filed suit in the Domestic Relations Branch of the District of Columbia Court of General Sessions seeking an award for accrued installments of maintenance, specific performance as to future monthly payments, and an award of counsel fees. In defense, appellee alleged that their marriage in New York was void as appellant's first marriage had not been legally terminated and the separation agreement was therefore without consideration and unenforceable. The trial judge held in favor of appellant as to her claim for judgment for accrued installments but refused to direct future payments under the separation agreement or to award counsel fees. This appeal and cross-appeal followed.

Maria Julia Rosenbaum married her first husband in Uruguay in 1943. After the birth of two children, the family established its permanent residence in 1948 in Mexico. Their third child was born there with a respiratory ailment. Seeking a medical specialist, appellant with her two daughters came to the District of Columbia in early 1950, intending to return to her husband in Mexico. Her then husband paid for her travel and living expenses in addition to medical bills for the daughter. While here appellant met and "fell in love" with appellee. Shortly thereafter they began to live together. Appellant then decided not to return to Mexico. They telephoned appellant's husband in Mexico and requested that he give her a divorce. Appellee made all arrangements for appellant

to obtain a Mexican divorce from her first husband and paid for all costs incident thereto, including her transportation expenses to and from Mexico for that purpose. Her first husband, residing in Mexico at that time, signed a waiver of personal appearance at the trial and was represented by his attorney. Appellant was present in the divorcing court in Juarez, Mexico, and on February 21, 1951, was awarded a divorce.

Appellee attacks the validity of appellant's Mexican divorce from her first husband. There is no doubt that a Mexican "mail-order" divorce is null and void. Sears v. Sears, D.C.Mun.App., 166 A.2d 748, 749, n. 1 (1960), rev'd on other grounds, 110 U.S.App.D.C. 407, 293 F.2d 884 (1961). However, "mail-order" divorces are null and void only because the Mexican court has no scintilla of jurisdiction when neither party thereto was ever in that country or the responding party had improper or no notice of the proceedings there. Anderson v. Anderson, 84 U.S. App.D.C. 231, 172 F.2d 280 (1949). Here the facts are different. Both parties to the questioned divorced had resided in Mexico and the husband was still residing there at the time of the trial, although appellant had apparently abandoned her marital domicile to be with appellee. The husband had ample notice of the proceedings in Mexico, was represented by counsel, and voluntarily executed and filed a written waiver of appearance, while appellant was present in person at the trial. The divorce was granted in compliance with the formalities of applicable Mexican law. The factors that make the divorce proceedings objectionable in the "mail-order" type of divorce were not present here. Under the facts of this particular case, we recognize this divorce as valid.[1]

Moreover, there is another basis for upholding its validity. It is well settled that "[m]arriages not polygamous or in-

cestuous, or otherwise declared void by statute, will, if valid by the law of the state where entered into, be recognized as valid in every other jurisdiction." Loughran v. Loughran, 292 U.S. 216, 223, 54 S.Ct. 684, 686, 78 L.Ed. 1219 (1934). While New York courts also refuse to recognize "mail-order" divorces, they, "without inquiring into domicile, have frequently recognized Mexican decrees if * * * the petitioning spouse has appeared in person and the answering spouse in person or by attorney." Rosenstiel v. Rosenstiel, 21 A.D.2d 635, 253 N.Y.S.2d 206, 209 (1964). Applying these rules to the present case, New York without doubt would recognize the validity of appellant's Mexican divorce thereby eliminating it as a bar to a valid second marriage to appellee in New York. Under New York law, the place where the marriage of the parties here involved was celebrated, the marriage did not produce a polygamous situation. As the marriage would be valid there and appellee has not offered any evidence supporting his charge of the invalidity of the Mexican divorce on any other grounds, we rule that the marriage of the parties in New York was valid.

We next consider the separation agreement executed by the parties on June 8, 1953. It is settled in this jurisdiction that, absent fraud, duress or illegal concealment, a valid separation agreement may be entered into between a husband and wife. Such agreement, if fairly and voluntarily made and if intended as a complete and final settlement of all property rights and claims between the parties, is binding and bars any further claim by either party thereto. Le Bert-Francis v. Le Bert-Francis, D.C.Mun.App., 175 A.2d 602 (1961). Such agreements are to be encouraged and when properly made should be enforced. Travis v. Travis, D.C.App., 203 A.2d 173, 175 (1964). One who attacks the validity of a separation agreement must carry the

1. Having found that the Mexican divorce was validly granted, we need not consider the applicability of 30 D.C.Code 1961 § 104 to the present case.

burden of proving its invalidity. Henderson v. Henderson, D.C.App., 206 A.2d 267, 270 (1965); Le Bert-Francis v. Le Bert-Francis, D.C.App., 194 A.2d 662, 663 (1963).

■ Apparently the sole basis for appellee's attack on the validity of the separation agreement was the alleged void divorce between appellant and her first husband in Mexico. Since we uphold the validity of that divorce and affirm the validity of the second marriage in New York, appellee's attack fails, and he has offered no other testimony showing absence of consideration. The trial court therefore did not err in awarding judgment for accrued installments of maintenance due under the agreement. On the other hand, while there was authority to specifically enforce the separation agreement as to future support payments, the decision or refusal to do so at this time rested within the discretion of the trial court and we do not find that the record reveals any abuse in refusing to order future payments now. See Zouck v. Zouck, 204 Md. 285, 104 A.2d 573, 576 (1954).

■ Finally, appellant asserts that the trial court erred in refusing to award her counsel fees. The separation agreement in paragraph FIFTH provides:

> " * * * The wife covenants and agrees that she will not in any action relating to and connected with the relationship of the parties, petition, ask for or demand counsel fees thereto and that she will save the husband harmless from any claim for services hereinafter rendered to her in any such action or actions with respect to such claim."

A party to a separation agreement validly executed cannot repudiate part thereof and affirm part thereof; the benefits cannot be accepted while the burdens are shirked. Travis v. Travis, supra. As appellant in her cause of action is attempting to enforce the benefits of the agreement, she cannot at the same time seek to avoid its burdens. We hold that the trial court did not commit error in refusing to allow her counsel fees.

Other errors claimed on this appeal have been considered and are found to be without merit.

Affirmed.