## NOVA DUNCAN SAGGESE *v.* VINCENT J. SAGGESE

[No. 645, September Term, 1971.]

*Decided May 19, 1972.*

The cause was argued before ANDERSON, ORTH and GILBERT, JJ.

*Lee Stuart Thompson* for appellant.

No appearance for appellee.

GILBERT, J., delivered the opinion of the Court.

Nova Duncan Saggese, appellant, filed a Bill of Complaint on October 8, 1970, against Vincent J. Saggese, appellee, in which she sought a divorce *a vinculo matrimonii,* alimony *pendente lite,* permanent alimony and counsel fees. Appellant grounded her suit on an oral vol-

untary separation agreement allegedly entered into on the 18th day of December, 1967. In timely fashion, appellee filed an answer to the complaint in which he averred that although they separated on the date alleged by the appellant, they had, nevertheless, entered into a "Separation Agreement on the 19th day of October, 1968." The case was heard before Judge Walter M. Jenifer, in the Circuit Court for Baltimore County, on April 8th, 20th and 21st, 1971. The Chancellor awarded to the appellant a divorce *a vinculo matrimonii* on the basis of the voluntary separation, Art. 16, § 24, and, among other things, a contribution from the appellee toward appellant's counsel fees and certain other monies not here pertinent. He declined, however, to order the payment of either alimony *pendente lite* or permanent alimony. Notwithstanding the wife's attack on the agreement on the grounds of duress, oppression and undue influence, Judge Jenifer held that the wife had, by her action or inaction, ratified the separation agreement in which she had expressly waived alimony.

Appellant, feeling greatly aggrieved by Judge Jenifer's decision, has appealed the findings of the Chancellor to this Court, and assigns as reasons therefor the following:

"I. The Court below erred in failing to find that the separation agreement executed between the parties was unconscionable and therefore unenforceable against the Appellant in Equity, because of gross inadequacy of consideration and the circumstances surrounding the execution of the agreement by the Appellant.

II. The Court below was in error in failing to find that the execution of the separation agreement between the parties by the Appellant was secured by the Appellee by the practice upon the Appellant of duress, undue influence, oppression and other inequitable conduct.

III. The Court below erred in finding that following the execution of the separation agreement, the conduct of the appellant was such as to constitute a ratification of the agreement by her."

Because we believe Judge Jenifer was correct in holding that the appellant, by her conduct, ratified, acquiesced in and affirmed the agreement of October 19, 1968, and its amendments thereto, we shall affirm the decree of the Circuit Court for Baltimore County. In so holding, we find it unnecessary to discuss the appellant's first and second contentions, for reasons hereinafter apparent.

The testimony established that the parties were married on July 18, 1943, and they continued to reside together as husband and wife until December 18, 1967. The marriage was at best stormy, and in spite of attempts at marital counselling to work out their problems the parties were unable to reconcile their differences. The husband consulted an attorney in November, 1967, and the wife also sought legal counselling after the husband had informed her that he had seen a lawyer. The wife's present counsel was not her then legal advisor. After some negotiations, an agreement was drafted by appellee's attorney which the wife and her attorney found to be unacceptable. Subsequently, on October 18, 1968, the husband visited the domicile of the wife and his two children and during a marathon discussion that apparently began around 8:00 p.m. on October 18th and terminated at approximately 2:00 a.m. on October 19th, certain amendments to the agreement were typed by the appellant. There was testimony from the wife, and the children of the parties (both of whom have now reached their majority and both of whom were self-supporting at the time of the hearing of this matter) that the conversation between the appellant and the appellee was loud, that the appellant occasionally was in tears, and that the appellee appeared to be angry.

The original agreement, as drafted by appellee's attorney, provided in pertinent part:

> "9. The Husband shall pay the sum of Twenty Dollars ($20.00) per week to the Wife for the support, maintenance and education of the two children aforesaid until each said child reaches

the age of twenty-one (21) years of age, becomes married or emancipated, or shall obtain gainful employment (not including part-time employment during school recess), which ever event shall occur first.

*  *  *

"17. The Wife in consideration of this Agreement and other good and valuable considerations does hereby waive all claim to alimony, both pendente lite and permanent."

The wife then admittedly typed upon the agreement the following:

"DUE TO THE URGENCY OF THIS AGREEMENT BEING SIGNED BY MR. SAGGESE IN THE ABSENCE OF BOTH LAWYERS — THIS AGREEMENT WILL BE CONSIDERED VALID ONLY WHEN USED IN CONJUNCTION WITH THE 5 AMENDMENTS WHICH ARE ATTACHED."

This clause was signed by both parties. To the agreement were attached the 5 amendments which we quote *in toto*.

"Amendments to the separation agreement between Vincent J Saggese and Nova Duncan Saggese.
1. Paragraph 9 amended to read $40.00 per week for food and allowance for the children. Mortgage or rent payments of $40.00 per week. $10.00 per week to be used as mother may see fit toward clothing, dental, and medical not covered by Blue Cross. This in addition to the cost of education for the children.
2. In lieu of Paragraph 17 Mrs. Saggese will be paid the mortgage payments, or rent (should the house be sold) until the children are 21 years of age or self supporting.
3. Mr. Saggese will continue to carry complete medical insurance, including Blue Cross, Blue

Shield and a satisfactory major medical policy
for the entire family.

4. Mr. Saggese will not further visit or call at
the home.

5. Mr. Saggese agrees to retain the children,
Catherine and Bernard as equal beneficiaries on
all insurance policy which Mr. Saggese now
holds or to be instated (sic) in the future."

These amendments, along with the original agreement,
were signed and sworn before a Notary Public in Balti-
more County on October 19, 1968.

The appellee paid the mortgage payments and the sum
of $50.00 a week as child support to the appellant until
the older child, Catherine, obtained employment in April
of 1970, at which time the appellant reduced the sum to
$25.00 per week for the support of Bernard only, and,
continued to pay the mortgage. Subsequently, when the
son declined to attend college and became self-support-
ing, the appellee ceased making the $25.00 payment on
behalf of his son. Appellee advised the appellant that he
would no longer make the mortgage payments after the
October, 1970 payment, and because the appellant was
fearful of losing her home she sought the services of her
present attorney. As a result of negotiations between her
now attorney and the husband's counsel, the husband did
pay one-half of the monthly mortgage payments until the
appellant filed her Bill of Complaint.

A great deal of the testimony centered around the dis-
cussion of October 18-19, 1970, and the execution of the
agreement on the 19th before the Notary Public. The tes-
timony elicited on behalf of the appellant attempted to
establish duress, oppression and undue influence. How-
ever, the appellee denied the same. The Chancellor stated
in regard thereto:

"The burden of proof moreover is upon the
person seeking to rescind a contract on these
grounds to establish by a fair preponderance of
the affirmative evidence that the contract in

question was procured by duress or undue influence.

"It is extremely doubtful in my mind that Mrs. Saggese has met this burden of proof. It is not necessary, however, to reach a decision in this case solely on that ground. The more important ground is the question of whether or not at this time Mrs. Saggese is entitled to a rescission of this contract."

Judge Jenifer concluded, that the ratification of the agreement by the appellant, Mrs. Saggese, overrides any other questions posed by the appellant. There was evidence to support the Chancellor's findings and since he had the opportunity to see and hear the witnesses, those findings are entitled to great weight. *Hoffman v. Seth,* 207 Md. 234, 114 A. 58 (1955) ; *Trudeau v. Trudeau,* 204 Md. 214, 103 A. 2d 563 (1954) ; *Mullinix v. Mullinix,* 12 Md. App. 402, 278 A. 2d 674 (1971) ; *Myers v. Butler,* 10 Md. App. 315, 270 A. 2d 341 (1970). We see no reason to disturb his findings.

The Court of Appeals in *Faller v. Faller,* 247 Md. 631, 233 A. 2d 807 (1967), said that when a wife discovered the fraud practiced upon her with respect to an insurance policy allegedly procured by her husband, it was incumbent upon her to promptly assert her rights by either rescinding or ratifying the provision of the separation agreement governing insurance. The Court quoted with approval from *Hughes v. Leonard,* 181 P. 200 (Col. 1919), wherein the Colorado court said:

"* * * No express ratification is necessary. Any act of recognition of the contract (retaining the fruits of it through many years) has the effect of an election to affirm. Acts of dominion exercised over the property received under the contract 'after knowledge of the ground of recission' amount to a ratification. * * *.

* * *

"One who, knowing his rights, takes no steps

to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state if the rights be then enforced, is estopped by the doctrine of laches from assertion of the rights.

\* \* \*

"\* \* \* [P]laintiff's whole claim to a recovery is based upon an alleged fraud perpetrated on her by her husband. A well-settled rule of law required her, in such case, to take proper steps to set aside her contract within a reasonable time after the fact of the fraud became known to her."

The Court of Appeals, speaking through Judge Horney, continued at page 637:

"Since waiver and estoppel have the same effect in cases concerning a separation agreement as they do in other cases, the question is in the end factual and a decision necessarily depends on the particular circumstances of each case. For example, in *Page v. Woodson*, 200 S.W.2d 768 (Ark. 1947), wherein the wife waited more than three months after a divorce decree and property settlement (which she claimed to have accepted under duress) and for a week following the death of her husband before seeking to set the settlement aside, it was held that she was estopped."

Here, the appellant, Mrs. Saggese, continued to accept child support and mortgage payments under the separation agreement of October 19, 1968, until the younger of her two children became self-supporting. Even then, she did not question the agreement until the husband threatened to stop making the mortgage payments. It is significant that appellant, following the execution of the agreement of October 19, 1968, contacted her then attorney and discussed the matter with him. Mrs. Saggese

took no action as a result of the meeting with her then lawyer because, "No action was suggested."

In response to the court's inquiry, designed to elicit reasons for the appellant's delay in attacking the validity of the separation agreement, the transcript reveals the following:

"Q (By the Court)  Well, now, under the draft of the separation agreement exclusive of the amendments that were made * * *, Mr. Saggese agreed to make the mortgage payments on the property * * * while you resided in the property. Did you know the provision was in the agreement?

A  *It sound like to me there was no termination.*

Q (By the Court)  Well, did you consider that a disadvantage?

A  Well, I considered it to my advantage, because apparently I would have a roof over my head until the move was made for a final divorce. (E m p h a s i s supplied).
* * *

The Court:  Did Mr. Saggese make any contributions (sic) to you why he was stopping the mortgage payments in October?

A  He said that he felt that he had done enough for us, * * *.

The Court:  Well, had he told you that he was not going to make

any more mortgage payments before you consulted [appellant's then attorney]?

A    Yes, sir, he told me earlier in September that he was going to pay one more, *and I knew something had to be done.* (Emphasis supplied).
* * *

The Court:    * * *. What is the purpose of your consulting [appellant's then attorney]? because your husband had informed you that he was not going to make any further mortgage payments?
* * *

A    The reason I consulted [him was] *because something had to be done. I simply could not handle all of this myself.*

The Court:    Because he [appellee] was going to stop making any more mortgage payments?

A    That is correct." (Emphasis supplied).

We think Judge Jenifer properly applied the ancient equitable maxim:

*Vigilantibus et non dormientibus equitas subvenit,*
(it is to the vigilant and not to those who sleep upon their rights, that Equity lends assistance). Bouvier's, Law Dictionary and Concise Encyclopedia, 8th Ed. (1914). In short, appellant slept on her right to attack the agreement on the ground of undue influence or duress. We do not, however, imply or infer that such an attack by the appellant would have been meritorious if timely raised.

Separation agreements are contracts between the par-

ties and as such are subject to the same general rules governing construction as are other contracts. 1 Nelson, *Divorce and Annulment,* §§ 13.05, 13.32 (2d Ed. 1945); *Heinmuller v. Heinmuller,* 257 Md. 672, 264 A. 2d 847 (1970); *McClure v. McClure,* 15 Md. App. 226, 289 A. 2d 610; *Pumphrey v. Pumphrey,* 11 Md. App. 287, 273 A. 2d 637 (1971). See generally Art. 16, § 28. Thus, where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed. *Devereux v. Berger,* 253 Md. 264, 252 A. 2d 469 (1969); *McClure v. McClure, supra; Pumphrey v. Pumphrey, supra.*

A property settlement or separation agreement may be avoided by one of the spouses where the other obtained it by fraud, duress, or undue influence. 24 Am. Jur. 2d, *Divorce and Separation,* § 896, "Effect of fraud, coercion, unfairness, or the like," p. 1015. Even if we assume, *arguendo,* that the agreement had been executed by appellant under circumstances amounting to duress or undue influence, the contract would be, at best, voidable and not void. *Nusbaum v. Nusbaum,* 113 N.Y.S.2d 440, 444, 280 App. Div. 315 (1952). For even in a fraudulently induced separation agreement, the deception may be waived. *Faller v. Faller, supra,* and authorities cited therein at page 636.

The law of Maryland has long been to the effect that courts of equity do not countenance laches or long prejudicial delays and lapses of time and will not interfere in favor of a party who is guilty of laches or unreasonable acquiescence in the assertion of stale demands, after a limited period. *Henderson v. Harper,* 127 Md. 429, 96 A. 550 (1916); *Warburton v. Davis,* 123 Md. 225, 91 A. 163 (1914); *Wilhelm v. Caylor,* 32 Md. 151 (1870); *Syester v. Brewer,* 27 Md. 288 (1867); *Hanson v. Worthington,* 12 Md. 418 (1858).

Applying the rationale of *Faller v. Faller, supra,* and *Hughes v. Leonard, supra,* to the facts in the instant case, we have no difficulty in concluding, as did the Chancellor, that Mrs. Saggese could not obtain the "fruits" of the

separation agreement for the period of time that the benefits under that agreement flowed to her, and later be heard to complain because the "fruits" were no longer being harvested. Even if we assume that appellant signed the separation agreement of October 19, 1968 as a result of undue influence or duress, her subsequent conduct, after consultation with her then attorney, justified the Chancellor's finding that she had ratified the agreement by her conduct and that such ratification amounted to an estoppel in her subsequent attack upon the agreement's validity.

One who makes a "bad deal" has no right to abrogate or modify the foundations of that "deal" because he discovers in the light of changed conditions that he might have done better. *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183 (1941). "No court should undertake to redraft a contract merely because one of the parties has become dissatisfied with its provisions." *Vincent v. Palmer, supra.*

It is undisputed from the testimony that appellant, Mrs. Saggese, typed on the original agreement the legend pertaining to the amendments, just as she typed the 5 amendments, and, therefore, she has penned or authored her own improvident fate and cannot now be heard to say she did not know what she was doing. We are unpersuaded by her contention that she did not know she had any right to abrogate the agreement.

*Decree affirmed.*
*Costs to be paid by appellee.*