PETER F. SIMMONS *v.* SHIRLEY M. SIMMONS

[No. 1030, September Term, 1976.]

*Decided September 9, 1977.*

The cause was argued before MORTON, POWERS and MELVIN, JJ.

*Bruce C. Bereano,* with whom was *David L. Hill* on the brief for appellant.

*William F. Hickey,* for appellee.

POWERS, J., delivered the opinion of the Court.

Both parties to this appeal tell us, through counsel, that the pertinent facts are not in dispute, are not complex, and that the issue involved is simple. They disagree, however, on the correct resolution of the simple issue.

The case arises from a divorce, but domestic relations law is involved only to emphasize, by a process of exclusion, that the result is governed by the law of contracts.

Peter F. Simmons, appellant, and Shirley M. Simmons, appellee, were married in 1953, separated in August of 1973, and entered into a "Separation And Property Settlement Agreement" as of 15 January 1974. In August of 1974 the husband filed a Bill of Complaint in the Circuit Court for Montgomery County, praying for an absolute divorce on the non-culpatory ground of voluntary separation. He attached to the complaint a copy of the agreement of 15 January 1974, and prayed that the provisions of the agreement, "to the extent of the Court's jurisdiction in the premises, be incorporated in any decree entered herein."

The wife's answer admitted the allegations supporting the prayer for divorce. She also admitted that the parties had entered into the agreement, "in an attempt to resolve various issues in respect to positions of property, legal rights and obligations." She averred further, however, that the conditions of the agreement had not been complied with, and that she had received no support or maintenance.

On 11 July 1975 the court entered and filed a final decree granting the absolute divorce; stating that the provisions of the agreement of the parties are incorporated into the decree to the extent of the Court's jurisdiction, but shall in all

respects survive the decree; and providing that the "cause shall remain open for determination by the Court of any matters or provisions of the said * * * Agreement over which this Court has jurisdiction."

A few weeks after the filing of the decree Mrs. Simmons filed a "Further Amended Answer" in which she prayed that the Court:

1. Find that the plaintiff breached the agreement;

2. Order the plaintiff to pay her a sum reasonable, in the Court's discretion, as damages for the breach; and

3. Order the plaintiff to specifically perform the provisions of the agreement in the future, or, in the alternative, grant a reasonable amount of alimony to the defendant, or a reservation of such alimony.

Mr. Simmons responded with a denial that he had breached the agreement, and an assertion that Mrs. Simmons had no right to alimony, nor was the same reserved by the court. In addition he filed an affirmative claim for damages for alleged breaches by Mrs. Simmons of the agreement of each not to incur any debt on the credit of the other, and the agreement to apportion any tax refund on a pro rata basis.

We now refer to the significant provisions of the agreement. Paragraph 4 provides:

"4. Husband and Wife agree that since Husband is unemployed, Husband shall not be required at this time to pay to the Wife any sum for her support and maintenance. However, the parties agree to review the matter of support payments within sixty (60) days of the date of this Agreement and within sixty-day cycles thereafter. The Husband agrees to advise the Wife within ten (10) days of the acceptance of any employment or the undertaking of business venture or engagement in any form of self-employment. In no event, however, shall any support payments under this Agreement exceed $1,000 per month nor exceed in duration

beyond five (5) years from the beginning of such payments."

In addition, the parties agreed that their home in Bethesda would be conveyed to the wife, and that all of the furniture and other personal property in the home would be the sole property of the wife. Each was to retain the automobile then used by him or her. Neither would incur any debt on the credit of the other, and each would indemnify the other for breach of this provision. The husband was to be responsible for any deficiencies in past joint tax returns, and entitled to any refunds. A special provision was made for apportioning tax liability, or rights in a refund, if the parties filed a joint return for the year 1973.

The agreement recited that it contained the entire understanding of the parties and that there were no undertakings other than those expressly set forth; that each party acted upon the advice of independent counsel, and the agreement constituted a fair, reasonable, and adequate settlement of their rights; and that it constituted a full settlement and release of all claims and demands of every nature by one party against the other, including all liability in respect of support, maintenance, or alimony, and all rights incident to the marriage relation.

On the issues raised by the parties, a hearing was held before Chief Judge Ralph G. Shure. At the conclusion of the testimony the judge indicated his views on the basic issues, and suggested that counsel might agree on certain details. With respect to the principal question, Paragraph 4 of the separation agreement, the judge said that it clearly contemplated that when Mr. Simmons was employed, he would have to pay, and the question was how much. The judge did not, at that time, decide "what that amount should be or when it would start." He scheduled a further session at which he would hear arguments, but advised counsel that "clearly as far as she is concerned, the agreement was that he would pay her but it wouldn't start until he was employed." The court added that "whatever amount he is to pay must be geared to his employment and nothing else, and * * * that is the clear language."

At the later hearing on 13 August 1976, the trial judge, taking into account Mr. Simmons's income, and his expenses, said that he would order that Mr. Simmons pay to Mrs. Simmons, under their agreement, the sum of $600.00 per month for a period of five years, accounting from August 1975, so that there was then an accumulated arrearage of $7,200.00. Against that figure the judge allowed a setoff of $2,943.47, which he found that Mrs. Simmons owed for charges she made on credit cards of Mr. Simmons, and her retention of the entire tax refund for the year 1973.

All of these rulings were incorporated in an order signed by the court on 28 August and filed on 30 August 1976. This appeal by Peter F. Simmons was taken from that order. There was no cross appeal.

A court exercising general equity powers has jurisdiction in an appropriate case and upon proper proof to order that an agreement be declared null and void, usually because of fraud, duress, or other wrongdoing; that an agreement be reformed so as to express the true intent of both parties; or that certain types of contractual obligations be specifically performed by a party who has refused or failed to perform, when there is no adequate remedy at law. Any court has the power to construe or interpret the meaning of language used in a contract, when that language is ambiguous, and subject to more than one meaning.

The rules of interpretation in such cases have been stated many times by the Court of Appeals. A recent case is *Orkin v. Jacobson,* 274 Md. 124, 332 A. 2d 901 (1975), in which the Court cited many of its prior cases and quoted from *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 137 A. 2d 687 (1958), and *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 301 A. 2d 12 (1973). In *Slice v. Carozza Properties, Inc.* the Court said, at 368:

> "The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear

and definite understanding, or unless there is fraud, duress or mutual mistake."

In somewhat different language the Court had said in *Lawless, Adm'x. v. Merrick*, 227 Md. 65, 175 A. 2d 27 (1961), at 71:

"We find no ambiguity here, nor do we find that the language used is in any sense vague or susceptible of more than one meaning. Where a contract is plain as to its meaning there is no room for construction and it must be presumed that the parties meant what they expressed."

And in *Kasten Constr. v. Rod Enterprises* the Court said, at 328-29:

"The cardinal rule in the construction and interpretation of contracts is that effect must be given to the intention of the parties, unless it is inconsistent with some established principle of law, * * *. But, where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed, * * *. And, when the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant, * * *." (Citations omitted.)

In some respects the power of an equity court exercising its special statutory jurisdiction in cases of divorce, alimony, and support and maintenance of a spouse has been, at least until recently,[1] more restricted than its general equity power.

With respect to post-decree support payments to a spouse, a divorce court in Maryland may, in an appropriate case,

---

[1] Acts of 1977, Ch. 221, effective 29 April 1977, was enacted for the stated purpose of conferring "the powers of general and ordinary equitable jurisdiction" on equity courts in such cases. Our holding in this case would be the same under either view.

order the payment of alimony. If the parties have agreed upon payments which are not alimony, the court may, in its decree, approve the payments, and may thereafter enforce, but may not modify them.[2] See *Simpson v. Simpson,* 18 Md. App. 626, 308 A. 2d 410 (1973).

The court's authority was succinctly summarized by Judge Singley for the Court of Appeals in *Brown v. Brown,* 278 Md. 672, 366 A. 2d 18 (1976), at 675:

> "If the support provision of an agreement is for alimony, it will not be enforced as a matter of course in equity, *Zouck v. Zouck,* 204 Md. 285, 296, 104 A. 2d 573, 577-78 (1954), except when it is incorporated in a decree as alimony. If incorporated in the decree, it is subject to modification by the court, and may be enforced by contempt proceedings, *Heinmuller v. Heinmuller,* 257 Md. 672, 677, 264 A. 2d 847, 850 (1970).
>
> "If the support provision is not alimony, it may be made the subject of an action for specific performance to the same extent as any other contract, *Zouck v. Zouck, supra,* 204 Md. at 296. It may form the basis for an allowance of support incorporated in a decree, *Knabe v. Knabe,* 176 Md. 606, 613, 6 A. 2d 366, 369 (1939). It may be enforced through contempt proceedings, but it may not be modified, *LaChance v. LaChance, supra,* 28 Md. App. at 576, unless the agreement is subject to Code Art. 16, § 28, which is applicable to agreements entered into subsequent to 1 January 1976."

Any distinction between alimony and payments not constituting alimony has no significance in the present case. Mrs. Simmons relies exclusively upon what she contends are her rights under the agreement. At the hearing below, when Mr. Simmons's counsel attempted, perhaps as an alternative, to inquire into Mrs. Simmons's income and her

---

2. Effective 1 January 1976, support agreements made on or after that date are subject to modification by the court under certain circumstances. Code, Art. 16, § 28.

needs, objections by her counsel were sustained as irrelevant to her rights under the agreement. Mrs. Simmons, in her brief in this Court, pinpointed the issue when she said:

> "Reference was made *supra* re alimony allusion by appellant. The issue herein is exclusively contractual in nature and character. It is important to note that this Agreement was reached with advice of counsel at every stage by both parties. Appellee feels the Agreement was fair and reasonable under the circumstances prevailing at the time. Without considering any change of position, arguendo, even if the contract were not to be considered a good one by the appellant on further reflection or consideration, it would be too late. Good, bad, or indifferent, absent fraud, duress or marked irregularity, none of which are present or contended, the parties are bound if arrived at openly, voluntarily and with full knowledge of material factors relating thereto. One cannot ask the law to relieve him of the consequences of his own folly or fault."

We now return to an analysis of Paragraph 4 of the agreement between the parties. In that paragraph, we see that the parties agreed upon three things. They were:

1. That at that time the husband would not pay anything to the wife for support.
2. That periodically the parties would "review the matter of support payments", with the obvious implication that they may, in the future, arrive at an agreement for support payments to the wife. Ancillary to this was the husband's agreement to keep his wife informed of his employment status.
3. The "outer limits" of any negotiations which may take place would be $1,000 per month and a duration of five years.

The Chancellor was convinced, as we are, that it was the intention of the parties to negotiate a support agreement at some time in the future. The evidence shows that the parties did negotiate, but failed to reach an agreement. The judge concluded that if the parties failed to agree, the court had the power to fix the terms of an agreement for them. In the course of ruling on evidence during the hearing, the judge commented that in fact the court was negotiating for the parties, "because they weren't able to."

In negotiating for the parties, the court erred. It is often said that a court may enforce an agreement reached by the parties, but may not write an agreement for them when they did not. In 1 *Corbin on Contracts,* § 29, the author says:

> "It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent documentary agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called 'contract to make a contract' is not a contract at all."

See *Peoples Drug Stores v. Fenton,* 191 Md. 489, 62 A. 2d 273 (1948).

Neither in the written agreement of 15 January 1974 nor at any subsequent time did the parties agree that Mr. Simmons would pay support to Mrs. Simmons in any amount, or for any period of time. Without those essential terms, there was no agreement. There was nothing for the court to enforce. It is as if a court were asked to enforce an agreement "to sell my house at a price to be negotiated later", when no price had ever been agreed upon.

The order requiring Peter F. Simmons to make payments to Shirley M. Simmons "in accordance with the terms of the

Agreement" will be reversed. Although the court made a finding in favor of Mr. Simmons against Mrs. Simmons in the amount of $2,943.47 for breaches of the agreement by her, the court granted no affirmative relief, but set off that amount against the $7,200.00 which it found was owed by Mr. Simmons, and entered a finding against Mr. Simmons for the net amount of $4,256.53. The setoff falls with the principal debt.

> *Order dated 28 August 1976 reversed.*
> *Appellee to pay costs.*