Hazel C. **GABRIELIAN**, Appellant,

v.

Peter B. **GABRIELIAN**, Appellee.

No. 82–1145.

District of Columbia Court of Appeals.

Argued Nov. 22, 1983.

Decided March 7, 1984.

Joseph Patrick Clancy, Chevy Chase, Md., for appellant.

Curtis J. Karpel, Rockville, Md., whom Cynthia B. Malament, Rockville, Md., was on the brief, for appellee.

Before MACK, PRYOR and TERRY, Associate Judges.

PRYOR, Associate Judge:

Hazel Gabrielian appeals from an order of the trial court which enforced a handwritten settlement agreement drafted in contemplation of divorce from her husband, Peter. She claims that the court erred in enforcing the agreement because Mr. Gabrielian did not fully disclose his property holdings during negotiations. In light of subsequent disclosures, it is contended, the agreement represents an unfair and inequitable distribution of marital assets. Mrs. Gabrielian also claims that the trial court committed reversible error when it excluded probative evidence regarding her financial contributions to the marriage. It is urged that this ruling, in turn, led the court to make incorrect findings of fact. The decree of divorce is unchallenged here, but we perceive merit in Mrs. Gabrielian's contentions and therefore reverse the enforcement order.

I

The parties were married in 1953 in the District of Columbia. Their children, Tina and Craig, were born in 1961 and 1963 respectively. During that period, Mr. Gabrielian opened a real estate office in Maryland called Gabriel Incorporated. This venture was later terminated and, in 1968, a new firm called Gabriel Management was incorporated in Maryland. The corporation manages and sells real estate. Mr. Gabrielian is its president and sole owner.

Mrs. Gabrielian, a licensed beautician, practiced her vocation for twelve years dur-

ing the marriage. A portion of her earnings was deposited regularly in the parties' joint checking account. At her husband's urging, Mrs. Gabrielian did not work while raising the children.

In the middle 1960's a Maryland corporation called Cratina Enterprises was formed by the Gabrielians and Ibrahim Pourhadi, a close friend of Mr. Gabrielian. Cratina, named for the two children, was intended to create and maintain an estate in trust for the children. It was empowered to buy, sell, and hold real estate. It was capitalized in 1973, when its first and only organizational meeting was convened. Mrs. Gabrielian was not present at this meeting,[1] and was not selected to serve in any capacity on Cratina's board. Mr. Gabrielian was named Cratina's president; Pourhadi became secretary-treasurer.[2] The officers subsequently issued two hundred of Cratina's authorized one thousand shares to Mr. Gabrielian, as trustee for the children.[3] Pourhadi drafted a personal check for $32,000, which served as Cratina's initial capitalization. This loan was later repaid by Gabriel Management. The children have never contributed to Cratina's operations, and in fact were unaware of its existence prior to these proceedings.

Mr. Gabrielian has purchased several real properties, located in Maryland and Florida, during the past six or seven years. He holds record title to these properties, but has executed unrecorded deeds which purport to transfer title from himself to Cratina. The properties are managed by Gabriel Management. Properties previously so held

have been sold, with proceeds accruing to Mr. Gabrielian. After each sale, Mr. Gabrielian has distributed most of the monies received.[4] Additionally, several properties have been placed in irrevocable trusts for the benefit of the parties' son, Craig.

Mr. Gabrielian commenced an action for divorce in 1980 in the District. He had moved here for the purpose of obtaining a divorce, and now resides in Maryland. Mrs. Gabrielian lives in the marital home in Rockville. After filing for divorce, Mr. Gabrielian submitted two financial statements to the court. The statements mentioned neither the real property which he owned, accounts receivable owed to him by Cratina,[5] nor pension benefits owed by Gabriel Management and estimated to be worth $34,000.

The parties, represented by counsel, negotiated and drafted an agreement which provided for property division. Under its terms, Mr. Gabrielian was to give his wife $10,000, with an additional $3,000 upon sale of the marital home. The parties were to share equally in the proceeds realized upon sale of the home. Alimony, maintenance and support, and attorneys' fees were waived. No mention was made of the real estate held by Mr. Gabrielian, the accounts receivable, or the pension. It was intended that the parties would subsequently draft a "formal agreement" based upon the one they negotiated and signed.

No formal agreement was ever drafted. The $10,000 was never paid, and the marital home was never offered for sale. In Febru-

---

1. It is unclear whether Mrs. Gabrielian received notice of the meeting. The corporate minutes report that she received notice, but Mr. Gabrielian's testimony on the matter was equivocal.

2. Mr. Gabrielian's mother, although not present at the meeting, was named Cratina's vice-president.

3. Each child is the equitable owner of one hundred shares of Cratina stock.

4. Daughter Tina received $10,000, as a "wedding present," after the sale of a property held in unrecorded trust for Cratina, and each child received $22,000 after the sale of several condominium units. This latter sum constituted

most, but not all, of the net proceeds realized from the sale.

5. Cratina's tax returns for 1976–1980 reveal large debts owed by the corporation to its stockholders. In 1980, for example, Cratina owed $91,000. Mr. Gabrielian, as noted, is Cratina's sole stockholder. At trial, however, he denied that Cratina owed this sum to him; he alleged that the money was owed instead to Gabriel Management. But these receivables were not included in the estimates of Gabriel Management's net worth, which Mr. Gabrielian prepared and submitted to the court.

ary 1982, Mr. Gabrielian's motion to enforce the handwritten agreement was denied without prejudice.[6]

When the matter came to trial, Mrs. Gabrielian argued that the agreement was unenforceable because she had negotiated and signed it without full disclosure by her husband. She also sought alimony and attorney's fees in her counterclaim. Mr. Gabrielian contended that nondisclosure of the real estate was immaterial because he had divested himself of any interest therein, that Mrs. Gabrielian had overestimated the value of the accounts receivable, and that he had not known that his pension was to be reported. He asserted that the agreement was negotiated and signed after full disclosure of divisible assets. In any case, he argued, the agreement embodied a fair and equitable settlement.

The court made several findings before issuing its order. It found that Mr. Gabrielian paid $10,000 to his wife. It also found that Mrs. Gabrielian had made no financial contribution, and only "limited" non-financial contribution, to her husband's business. Further, the court found that nondisclosure of the real properties did not vitiate the agreement because Mr. Gabrielian

> had no basis upon which he legally could claim title to any of the said real properties, and he was bound by the various transactions effected solely for the benefit of the children of the parties, having intentionally divested himself of any future rights to claim any interests therein.

No findings were made regarding whether Mrs. Gabrielian had knowledge of the accounts receivable and pension benefits prior to execution of the agreement. The court held the agreement fair and equitable, and

ordered the parties to comply with its terms.

## II

■■■ Public policy encourages the drafting of settlement agreements; if valid, they are binding on the parties. *Rosenbaum v. Rosenbaum,* 210 A.2d 5, 7 (D.C. 1965); *Travis v. Travis,* 203 A.2d 173, 175 (D.C.1964). The agreements do not carry a presumption of invalidity, *id.; LeBert-Francis v. LeBert-Francis,* 194 A.2d 662, 663 (D.C.1963), so the burden of proving that the agreement should not be enforced because of "fraud, duress, or illegal concealment" is placed upon the challenger. *Rosenbaum, supra,* 210 A.2d at 7–8; *cf. Burtoff v. Burtoff,* 418 A.2d 1085, 1089 (D.C. 1980) (antenuptial agreement).[7]

In response to Mrs. Gabrielian's assertions that the agreement should not be enforced because Mr. Gabrielian failed to disclose several property interests in which she claims cognizable rights, the trial court made no findings concerning the alleged nondisclosure of the accounts receivable and pension benefits. *Murville v. Murville,* 433 A.2d 1106, 1109 (D.C.1981). Citing no authority, the court found that Mr. Gabrielian (and therefore his wife) had no interest in the real properties for which he held record title. We conclude that the court committed error in both respects.

■■■ We look to the law of the jurisdictions in which the properties are located to determine the validity of the purported conveyances. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223 (1971); R. LEFLAR, AMERICAN CONFLICTS OF LAW § 165 (1977); 16 AM.JUR.2d *Conflict of Laws* § 33 (1979);

---

6. Mrs. Gabrielian had opposed the motion, claiming that the agreement was not intended to be the final settlement of the parties' property rights.

7. Maryland law is essentially in accord with these principles. *See* MD.ANN.CODE art. 16, § 28 (1981 Repl.Vol.) (valid agreement binding on parties); *Kingsley v. Kingsley,* 45 Md.App. 199, 204, 412 A.2d 1263, 1267 (1980) (absent facial "injustice or inequity," agreement presumed

valid); *Bell v. Bell,* 38 Md.App. 10, 14, 379 A.2d 419, 422 (1977) (challenger bears burden of establishing invalidity); *Simmons v. Simmons,* 37 Md.App. 202, 206, 376 A.2d 1147, 1149 (1977) (court may declare agreement void if product of "fraud, duress, or other wrongdoing"); *accord Saggese v. Saggese,* 15 Md.App. 378, 388, 290 A.2d 794, 799 (1972) ("fraud, duress, or undue influence").

*see also Kyle v. Kyle,* 128 So.2d 427, 429–30 (Fla.App.1961), *writ of certiorari discharged as improvidently issued,* 139 So.2d 885, 889 (Fla.1962). Under Florida and Maryland law, title is not effectively conveyed as to third parties (here, Mrs. Gabrielian) until the instrument or deed is properly recorded. F.S.A. § 695.01 (1979); [8] MD.REAL PROP. CODE ANN. § 3–101(a) (1981 Repl.Vol.); *see Bourke v. Krick,* 304 F.2d 501, 503 (4th Cir.1962); *Kingsley v. Makay,* 253 Md. 24, 27, 251 A.2d 585, 587 (1969); *Nickel v. Brown,* 75 Md. 172, 185, 23 A. 736, 739 (1892). Throughout this litigation, Mr. Gabrielian has conceded that the deeds conveying his interest to Cratina were not recorded.[9] He retains record title, and therefore retains at least the legal interest as to third parties.[10] The trial court's conclusion to the contrary is unsupportable.

### III

Although Mr. Gabrielian retains an interest in the real properties, nondisclosure is not critical if Mrs. Gabrielian cannot establish a claim to a portion of it. On the present record, we cannot conclude that Mrs. Gabrielian has no interest in the real properties. Accordingly, we remand for a new trial.[11]

Maryland law will determine whether Mrs. Gabrielian has an interest in the real properties, accounts receivable, and pension benefits. *See Anderson v. Anderson,* 449 A.2d 334, 335 (D.C.1982); *Williams v. Williams,* 390 A.2d 4, 5–6 (D.C.1978); *see also* R. LEFLAR, *supra,* §§ 232–33. A divorcing spouse in Maryland may assert an interest in "marital property," which is "all property, however titled, acquired by either or both spouses during the marriage." MD. CTS. & JUD.PROC.CODE ANN. § 3–6A–01(e) (1980); *accord* D.C.Code § 16–910(b) (1981). The record currently contains no evidence that Mr. Gabrielian's real property, and accounts receivable, were obtained with funds held prior to the marriage. *See* MD.CTS. & JUD.PROC.CODE ANN. § 3–6A–01(e); *accord* D.C.Code § 16–910(a) (sole and separate property). Whether pension benefits owed to Mr. Gabrielian are marital property is at least an open question. *See Deering v. Deering,* 292 Md. 115, 128, 437 A.2d 883, 890 (1981); *Ohm v. Ohm,* 49 Md.App. 392, 399, 431 A.2d 1371, 1375 (1981); *accord Barbour v. Barbour,* 464 A.2d 915, 919 (D.C.1983).

On remand, if the court finds that marital assets were not disclosed prior to execution of the agreement, it must assess Mrs. Gabrielian's interest therein by reviewing her financial and non-financial contribu-

---

8. Florida law also requires the grantor to sign the deed in the "presence of two subscribing witnesses ...." F.S.A. § 689.01 (1979). Mr. Gabrielian did not do this. The unrecorded deed to the Florida property is therefore invalid under Florida law, and conveyed no interest to Cratina. *See Girard v. Tremblay,* 384 So.2d 39, 40 (Fla.App.1980).

9. As Cratina's president, Mr. Gabrielian is empowered to purchase, sell, and hold real estate for the corporation. It is not apparent why, then, if Mr. Gabrielian intended to obtain no individual interest in the real estate, he did not simply purchase the properties on behalf of Cratina and record the deeds in Cratina's name. Mr. Gabrielian stated at trial that excessive recordation costs and tax consequences prevented him from rerecording the titles in Cratina's name. But this does not answer the question of why title was not so recorded in the first instance.

Mr. Gabrielian also admitted at trial that the trust agreement, purporting to vest equitable

rights to various Maryland properties in his children, was never recorded. Under Maryland law, a trust is not valid as to third parties unless recorded. *Hoffman v. Gosnell,* 75 Md. 577, 594, 24 A. 28, 32 (1892) (interpreting predecessor to § 3–101(a)). Mr. Gabrielian cannot, therefore, rely upon the trust agreement as evidence that he has divested himself of interest in the properties.

10. So much was conceded by Mr. Gabrielian's real estate attorney during cross-examination.

11. The trial court made no findings, and we will not determine in the first instance, whether Mrs. Gabrielian had actual knowledge of the accounts receivable and pension benefits, prior to execution of the agreement. We also will refrain from deciding the extent to which Mrs. Gabrielian has an interest in these assets, leaving these questions to be answered by the trial court upon remand.

tions to the estate.[12]  *See Harper v. Harper,* 294 Md. 54, 80, 448 A.2d 916, 929 (1982) (adopting "source of funds" theory).  The agreement must then be scrutinized to determine if it represents a fair and equitable settlement.[13]

If the agreement is held to be unenforceable, and we express no opinion on that issue here, the court must assign each party respective interests in the marital property.[14]  Maryland courts cannot transfer title, but they can "grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property[,]" based upon the following criteria:

(1) The contributions, monetary and non-monetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) An award or other provision which the court has made under this Subtitle 6A with respect to family use property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

MD.CTS. & JUD.PROC.CODE ANN. § 3–6A–05(b); *see Wimmer v. Wimmer,* 287 Md. 665, 667 & n. 2, 414 A.2d 1254, 1257 & n. 2 (1980).

The decree of absolute divorce is hereby affirmed.  The order enforcing the handwritten settlement agreement is reversed, and the case is remanded for a new trial.

*So ordered.*

12.  The trial court erred by excluding Mrs. Gabrielian's check ledgers as proof of her financial contributions to the joint checking account, and Mr. Gabrielian's use of the money to fund Gabriel Management and Cratina.  The ledgers could have been admitted under the business records exception to the hearsay rule.  Super. Ct.Civ.R. 43–I(a); *see Franklin Inv. Co. v. Smith,* 383 A.2d 355, 356–57 (D.C.1978) (checkbook stubs must first qualify as business records before proving checks written); *cf. Sabatino v. Curtiss Nat'l Bank of Miami Springs,* 415 F.2d 632, 635–36 (5th Cir.) (holding ledger admissible under Federal Business Records Act), *cert. denied,* 396 U.S. 1057, 90 S.Ct. 750, 24 L.Ed.2d 752 (1969).  The ledgers clearly are relevant, and are far more probative of the source and use of funds than the parties' self-serving testimony.

13.  Both parties concede that Mr. Gabrielian never paid $10,000 to Mrs. Gabrielian as called for by the agreement, although they do not agree as to whether the sum was ever tendered.  The trial court, therefore, may not enforce the agreement pursuant to a finding that Mrs. Gabrielian's acceptance of a benefit under the agreement prevents her from challenging its validity.  *See Rosenbaum, supra,* 210 A.2d at 8; *Travis, supra,* 203 A.2d at 175–76; *see also Saggese, supra,* 15 Md.App. at 388–89, 290 A.2d at 799.

14.  If the agreement is voided, the court will be free to consider Mrs. Gabrielian's counterclaim for alimony and attorney's fees.